Danny SIMPSON, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 41A01–9212–CR–404.

Court of Appeals of Indiana,
First District.

Jan. 20, 1994.

John P. Wilson, Wilson & Associates, Greenwood, for appellant-petitioner.

Pamela Carter, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee-respondent.

ROBERTSON, Judge.

Danny Simpson appeals his convictions of murder and robbery for which he received consecutive sentences of fifty and ten years, respectively. Simpson raises four issues in this appeal:

(1) whether the court erred in admitting out-of-court statements of a co-conspirator when the co-conspirator subsequently refused to testify;

(2) whether the court erred in refusing Simpson's tendered instructions # 1, 3, 5, 6, 7 and 8;

(3) whether the court erred in permitting a blood spatter expert to testify that two people were involved in the crimes in question; and,

(4) whether there was sufficient evidence to sustain the jury's verdicts.

We affirm.

The evidence favorable to State established that Simpson and his friend, John Vance, devised a plan to kill Vance's mother and take her money and car. On August 9, 1991, Vance and Simpson killed Carolyn Vance at her home by inflicting blunt force wounds to her head with, among many other things, a casserole dish, and by stabbing her in the neck. After the murder and robbery, Simpson headed south with his girlfriend in Carolyn Vance's car while John Vance reported the crime to the police, implicating Simpson. Vance was convicted in a separate trial of two counts of conspiracy, murder and robbery.

### I.

Simpson argues that statements made by his alleged co-conspirator, John Vance, which incriminated Simpson, and came into evidence through the testimony of two investigating police officers and the individual whom Vance approached to call the police, should have been excluded because their admission violated the Confrontation Clause and Indiana evidentiary rules.

Simpson's constitutional claim is based upon the principles enunciated in the United States Supreme Court decision, *Bruton v. United States* (1968), 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, in which the high court held that the conviction of a defendant at a joint trial should be set aside because of the admission of a codefendant's confession which inculpated the defendant, even though the jury had been instructed to disregard the codefendant's confession in determining his guilt or innocence. A case in the *Bruton* line of cases which is more factually analogous to the present one is *Douglas v. Alabama* (1965), 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934, which holds that a defendant has been denied the right of cross-examination secured by the Confrontation Clause when the State offers into evidence a witness' confession which implicates the defendant but the defendant is unable to cross-examine the witness about the statement because the witness has invoked his privilege against self-incrimination.

Simpson did not object to the introduction of the evidence he now challenges on the ground that it denied him his right of confrontation or precluded him from cross-examining the witnesses. At trial, Simpson objected solely upon state evidentiary grounds: that the statements constituted inadmissible hearsay and were irrelevant, and that an adequate foundation showing the existence of the conspiracy and that the statements were made in furtherance of the objectives of the conspiracy, had not been made by the State to gain admission. Consequently, Simpson has not preserved as error his contention that the evidence should have been excluded because to admit it would deny him his right of confrontation. An appellant may not obtain reversal by stating an allegation of error on appeal which differs from the objection made at trial. *Brewer v. State* (1993), Ind., 605 N.E.2d 181, 183.

However, even if Simpson has properly preserved error in this regard, and *Bruton* error occurred, the error fits into the category of constitutional violations which have been characterized as "trial error," *Arizona v. Fulminante* (1991), 499 U.S. 279, 307, 308, 111 S.Ct. 1246, 1263, 1264, 113 L.Ed.2d 302, and held to be amenable to harmless-error analysis. *Brown v. U.S.* (1973), 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208. See, also, *Carter v. State* (1977), 266 Ind. 140, 361

N.E.2d 145. Accordingly, in reviewing claims of constitutional error of the trial type on direct appeal, we apply the harmless-beyond-a-reasonable-doubt standard adopted in *Chapman v. California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. *Brecht v. Abrahamson* (1993), —— U.S. ——, ——, 113 S.Ct. 1710, 1717, 123 L.Ed.2d 353. Under this standard, before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. *Fulminante*, —— U.S. at ——, 111 S.Ct. at 1257. The court has the power to review the record *de novo* in order to determine an error's harmlessness. *Id.* In so doing, it must be determined whether the State has met its burden of proving that the error did not contribute to the defendant's conviction. *Id.*

■ In addition to the statements made by Vance on the day of the murder through which Vance attempted to implicate his friend, defendant Simpson, as the murderer, the State introduced fingerprint and blood analysis evidence which strongly tended to establish Simpson's active participation in the murder and robbery. Simpson's fingerprints were discovered, as were hair and blood containing genetic traits consistent with the blood of the victim, on pieces of a broken casserole dish found on the couch near the victim. One of the shoes and the shirt which Simpson was wearing at the time of his arrest contained blood which, too, was consistent with that of the victim. A blood spatter expert opined from an analysis of the physical evidence present at the crime scene that two persons were involved in the attack; that the blow sustained by the victim from the casserole dish had a powerful impact; and, that a high impact blow would cause the victim's blood to spatter in a fine mist.

In addition to the physical evidence tending to establish Simpson's involvement, the State offered the testimony of Simpson's girlfriend, who fled with him after the murder, that when Simpson and John Vance arrived at her home on the day of the murder, she permitted Vance to use her shower. While Vance was in the shower, Simpson removed his shirt and the witness observed blood in a spray of little dots upon Simpson's stomach. The witness washed the blood off of appellant Simpson's abdomen. A blood soaked wash cloth left in the sink and a shower curtain soaked with blood were recovered from the home of Simpson's girlfriend's parents. Simpson told his girlfriend, while they were fleeing in the victim's car, that John Vance had killed his mother. The witness had observed John Vance give Simpson cash for the trip before the twosome fled. Only the night before the murder, Simpson had told her that he did not have access to any cash and only had $2.00 to his name. Police found an empty, blood-stained bank envelope and the victim's dismantled purse at the crime scene.

Other witnesses testified that Simpson was with Vance the night before the murder when he borrowed some saws, one of which was found at the scene of the murder. A neighbor of the victim testified that the night before the murder she had overheard John Vance ask Simpson whether they were going to do it and Simpson respond that they needed a plan. Carolyn Vance's sister also overheard Vance tell Simpson that he ought to kill his mother because she did not make enough money.

The State offered a considerable amount of evidence tending to establish that John Vance was the primary perpetrator of the crimes. That fact notwithstanding, Simpson's flight following the murder and his acceptance of cash from John Vance, along with his fingerprints on one of the objects used to inflict a fatal wound upon the victim and the blood on his person immediately after the crime is strong circumstantial evidence of his participation in the murder and robbery, and establishes his guilt beyond a reasonable doubt. Hence, we find in the record a solid evidentiary basis upon which to conclude that error if any in admitting the hearsay statements attributed to John Vance without the benefit of cross-examination did not contribute to the jury's guilty verdict.

■ Simpson's allegation of State evidentiary error likewise does not require reversal. Under Indiana law, the acts or statements of the parties to a conspiracy undertaken or made in furtherance of the objectives of the conspiracy are admissible against

all the parties to the conspiracy, even though the statements have been made or the acts are performed in the absence of the defendant. *Chinn v. State* (1987), Ind., 511 N.E.2d 1000, 1002. However, because an alleged conspirator's involvement in a conspiracy cannot be proven solely by the declarations of a co-conspirator or agent, *Patton v. State* (1960), 241 Ind. 645, 175 N.E.2d 11; *see also Sims v. State* (1977), 265 Ind. 647, 358 N.E.2d 746, 747, the State must lay an evidentiary foundation showing the existence of a conspiracy before the acts or declarations of one conspirator can be admitted into evidence against the other. *Chinn,* 511 N.E.2d at 1002. The State's proof of the existence of a conspiracy may be by direct or circumstantial evidence and need not be strong, *id.; Patton,* 241 Ind. at 648, 175 N.E.2d 11; the sufficiency of the State's showing is left to the discretion of the trial court. *Siglar v. State* (1989), Ind., 541 N.E.2d 944. Once the State has made a prima facie showing of the existence of the conspiracy, those acts and declarations which transpired or were made between the beginning and ending of the conspiracy and in furtherance of its objectives may be admitted against the asserted conspirator who did not make the declarations. *Chinn,* 511 N.E.2d at 1002. A co-conspirator's confessions or admissions of the existence of a conspiracy made after he has been apprehended or arrested are ordinarily not within the scope of or in furtherance of the conspiracy so as to be admissible against his fellow conspirators. *See Patton,* 245 Ind. at 649, 175 N.E.2d 11; *Sims,* 358 N.E.2d at 747.

■ In the present case, the State offered into evidence certified copies of the judgments of conviction of conspiracy, murder and robbery entered against John Vance as proof of the existence of the conspiracy. It then offered the testimony of three witnesses who recounted John Vance's statements made on the day of the murder that Simpson had murdered Vance's mother for her paycheck. The trial court permitted the witnesses to repeat the statements of Vance, over Simpson's objections, based upon an exception to the hearsay rule permitting the introduction of hearsay statements to show the course of the police investigation. How-

ever, at no time did the State offer any evidence showing Vance's declarations to the various witnesses to be within the scope of the conspiracy or in furtherance of its objectives. Therefore, even if it could be said that the fact of a co-conspirator's conviction of conspiracy suffices to show the existence of a conspiracy, the acts and declarations of John Vance are not relevant evidence of Simpson's involvement in the conspiracy itself.

In any event, Simpson was acquitted of the two counts of conspiracy, and the State offered ample independent evidence of probative value establishing the essential elements of murder and robbery. We acknowledge that a different harmless error standard is to be applied to state evidentiary rather than constitutional errors, *Hardin v. State* (1993), Ind., 611 N.E.2d 123, 131 (citing *Warner v. State* (1991), Ind., 579 N.E.2d 1307, 1311 which relies upon *Stwalley v. State* (1989), Ind., 534 N.E.2d 229, 232 and *Kotteakos v. United States* (1946), 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557) (the improper admission of evidence is harmless error when the conviction is supported by such substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction, *Wickizer v. State,* (1993) Ind., 626 N.E.2d 795, 800 (citing *Jaske v. State* (1989), Ind., 539 N.E.2d 14, 22)), but, the change in standard does not alter our result. See *Brecht v. Abrahamson,* —— U.S. at ——, 113 S.Ct. at 1722 (characterizing the *Kotteakos* standard as "less onerous" and as requiring a showing of *actual* prejudice). The State's "substantial independent evidence of guilt," recounted above, satisfies us that the jury's verdict was not "substantially swayed" by the admission of evidence of the acts and declarations of a co-conspirator outside of the scope of the conspiracy which were designed to and did implicate the appellant Simpson in the murder and robbery of Carolyn Vance.

**II.**

■ Simpson next challenges the trial court's refusal to give certain of his tendered jury instructions on lesser offenses. Error in the rejection of lesser included offense

instructions is analyzed by looking first at the statutes and the charging document to determine whether the lesser offense is inherently or factually included in the greater offense. *Aschliman v. State* (1992), Ind., 589 N.E.2d 1160, 1161. Then, the inquiry focuses on whether the evidence offered at trial established that the lesser offense was committed but the greater offense was not. Resolution of this second question turns upon whether a serious evidentiary dispute exists respecting the element which distinguishes the greater and lesser offenses. *Id.* at 1162.

■■■ Simpson tendered instructions on involuntary manslaughter, battery, criminal recklessness and theft. The charged crime of murder occurs when a person knowingly or intentionally kills another human being. Ind.Code 35–42–1–1(1). Involuntary manslaughter occurs when a person kills another human being while committing or attempting to commit a battery, I.C. 35–42–1–4, and contemplates an incidental killing that occurs during a battery. *Lynch v. State* (1991), Ind., 571 N.E.2d 537, 538 *citing Ingram v. State* (1989), Ind., 547 N.E.2d 823, 831. Battery is defined as the knowing or intentional touching of another person in a rude, insolent or angry manner. I.C. 35–42–2–1. The offense of criminal recklessness is committed when a person recklessly, knowingly, or intentionally performs an act that creates a substantial risk of bodily injury to another person. I.C. 35–42–2–2(b). Where a killing is accomplished with a touching, involuntary manslaughter and battery are lesser included offenses of murder. *Lynch*, 571 N.E.2d at 539.

■■ The intent element distinguishes involuntary manslaughter, battery, and criminal recklessness from murder; hence, a lesser included instruction will be warranted with respect to the charged crime of murder only if there is a serious evidentiary dispute about what Simpson intended to do—kill, batter, or simply act in such a way as to create a substantial risk of injury. See *Lynch*, 571 N.E.2d at 539. The record contains no serious evidentiary dispute on the question of Simpson's culpability. Simpson did not at any time admit that he touched Carolyn Vance. Rather, his defense consisted of an effort to challenge the State's proof of his participation at all in the crime. Thus, there is no serious evidentiary dispute warranting an instruction on involuntary manslaughter, battery, or criminal recklessness. The evidence does not permit a determination that any of the lesser offenses were committed while the greater offense of murder was not.

■■ Likewise, an instruction on theft as a lesser included offense of robbery was not warranted upon the evidence presented. Pursuant to I.C. 35–43–4–2, a person who knowingly or intentionally exerts unauthorized control over property of another with the intent to deprive that person of its use or value commits theft. Robbery as defined by I.C. 35–42–5–1 occurs when a person knowingly or intentionally takes property from another by the use or threat of force or by putting such person in fear. Although a conviction of robbery requires proof of all the elements of theft, *Brooks v. State* (1986), Ind., 497 N.E.2d 210, 217, it is not error to refuse an instruction on theft when there is no question that all of the elements of robbery are present, *id.*, or where the only point of contention at trial is the issue of the identity of the perpetrator of the offense. *Delatorre v. State* (1989), Ind., 544 N.E.2d 1379, 1382.

There is no serious evidentiary dispute on the distinguishing element of force in this case. The only question before the jury was Simpson's participation in the crimes; hence, there was no evidence presented at trial from which the jury could have found an absence of force and thus, that theft, but not robbery had occurred or that Simpson participated only by taking Carolyn Vance's money. *Cf. Jackson v. State* (1988), Ind., 521 N.E.2d 339; *McFarland v. State* (1988), Ind., 519 N.E.2d 528; *Brooks*, 497 N.E.2d 210; *Minton v. State* (1978), 269 Ind. 39, 378 N.E.2d 639. The State's evidence established that Simpson used force to kill Carolyn Vance in order to obtain the proceeds of her paycheck. Police found Carolyn Vance's purse at the scene of her murder. Her wallets had been removed and an empty bank money envelope left behind with her blood upon it.

We find no error in the trial court's refusal of Simpson's tendered instructions on lesser included offenses.

### III.

Simpson next maintains that the court erred in permitting a blood spatter expert to testify that two people were involved in the commission of the crimes. Simpson expressly does not take issue with the witness' qualifications generally as a blood spatter expert. Hence, he agrees that the subject matter of the expert's testimony was so distinctly related to science that it was beyond the knowledge of the average lay person and that the witness had sufficient skill, knowledge and experience in the field to offer an opinion which would aid the trier of fact in the search for the truth. Simpson argues, however, that the witness did not have sufficient expertise to express an opinion on the number of persons involved in the crime and that to express such an opinion invaded the province of the jury. This latter contention, that the jurors were equally qualified to draw the conclusion offered by the witness, was not a part of the objection he made at trial.

Under Indiana law, no precise quantum of knowledge is required of an expert witness provided the witness shows a sufficient acquaintance with the subject matter of his testimony. *Fox v. State* (1987), Ind., 506 N.E.2d 1090, 1095; *Reid v. State* (1978), 267 Ind. 555, 372 N.E.2d 1149. Limitations in the witness' expertise go to the weight of his testimony, not its admissibility. *Fox,* 506 N.E.2d at 1095.

At the beginning of his testimony, expert Sadowski told the jury that blood travels in a predictable motion such that the analysis of it had been reduced to a mathematical science. Analysis of the spatter of blood would tell the expert the location of the victim at the time of the injury, the number of times the victim had been struck, the tools which had been used at particular points in time to cause the injury, the force of the impact, whether the victim struggled, and whether the physical evidence contradicted or supported the defendant's explanation of the crime. Expert Sadowski also told the jury that he could determine from the nature of the spatter the number of people who were involved in the beating. Before expressing the opinion that two persons had actually been involved in the striking, expert Sadowski identified each of the sites of a striking, and opined, without objection, that the victim had been struck repeatedly, approximately 31 times, and that the assault upon her had been continuous in nature, never stopping until the victim came to her final resting place. The witness had also offered the opinion, from the spatter in the bedroom and the stains on the shirt circumstantially associated with John Vance, that at a particular point in the attack, which began in the northwest bedroom and ended in the living room, the primary perpetrator had stopped the attack in the northwest bedroom to wash the blood from his face and person. The shirt of defendant Simpson also contained blood stains diluted with water and a transfer stain on the inside of the shirt consistent with the contact of the shirt on the defendant's blood spattered stomach.

Expert Sadowski thus had laid an evidentiary foundation from his analysis of the path of the attack and the nature of the stains on the alleged assailants' clothing to permit the expression of his ultimate conclusion that two persons had participated in the attack. His conclusion was not "pure speculation." Moreover, before he responded to the purportedly objectionable question, Sadowski had ably demonstrated his expertise with the subject of blood spatter analysis. Therefore, whatever the limitations in his expertise or analysis, his expert opinions were admissible. Finally, while the jury may have been able to deduce from the expert's other opinions expressed without objection, that two persons had participated in the killing, it is clear from the nature of expert Sadowski's testimony that the jury would not have been able to draw any conclusion from the physical evidence found at the scene without Sadowski's interpretation of it. His opinion on the number of participants drawn from the blood spatter is therefore not objectionable on the ground that it is a matter within the common knowledge of lay persons.

## IV.

Lastly, Simpson argues that the evidence is insufficient to sustain his convictions. It should be readily apparent from our analysis of the other errors presented in this appeal that Simpson's insufficiency argument is entirely without merit.

Judgment affirmed.

BAKER and RILEY, JJ., concur.