Joseph HARTMAN, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 18S00–9501–CR–42

Supreme Court of Indiana.

Aug. 7, 1996.

Raymond A. Brassart, Brassart Law Offices, Muncie, for Defendant–Appellant.

Pamela Carter, Attorney General, James A. Joven, Deputy Attorney General, Indianapolis, Office of the Attorney General, Indiana Government Center, Indianapolis, for Appellee

SELBY, Justice.

Appellant Joseph Hartman appeals his conviction for Murder; Robbery, a Class A felony; and Conspiracy to Commit Robbery, a Class A felony. The trial court merged the Robbery conviction with the Conspiracy conviction, and sentenced Hartman to sixty years on the Murder conviction, and fifty years on the Conspiracy to Commit Robbery conviction. The court ordered Appellant to serve these sentences consecutively, for a total sentence of 110 years.

Appellant raises two issues on appeal. First, Appellant challenges the trial court's decisions regarding several jury instructions. Secondly, Appellant challenges the sufficiency of the evidence supporting his conviction. Because, with these issues, Appellant raises no reversible error, we affirm the judgment of the trial court.

Appellant's convictions arose out of the following events. On June 15, 1993, Mark Sekse and victim David Turner were travelling to Liberty, Indiana on a miniature golf outing. While in transit, Turner received several calls to his beeper from Appellant Hartman. It seems that Turner was engaged in the sale of pounds of marijuana. Appellant Hartman advised the victim Turner that Appellant would like to purchase ten pounds of the contraband. In response to Appellant's purchase order, Turner and Sekse, marijuana in hand, travelled to a Budget Motel in Muncie, Indiana, where they contacted Appellant. Appellant arrived, a disagreement ensued, and Appellant and Turner left the Motel in Sekse's car.

Meanwhile, Appellant's confederates were lying in wait at a Muncie house. Certain members of this group had conspired with Appellant to commit a battery upon Turner, steal his marijuana and money, and leave town. When Turner and Appellant arrived, one confederate struck Turner's head with a wooden table leg, and a second confederate taped Turner's hands behind his back. After the group sufficiently subdued Turner, a third confederate placed a plastic bag over Turner's head, suffocating him. Appellant and two of his cohorts disposed of Turner's body in a field. Appellant was charged with and convicted of Murder, Robbery, and Conspiracy to Commit Robbery. Appellant now brings this direct appeal.

Appellant first argues that the trial court improperly refused two final jury instructions which he submitted, his Proposed Instructions Seven and Nine. When review-

ing the refusal of tendered instructions, we undertake a three part analysis, first determining whether the tendered instruction correctly states the law. If so, we next determine whether there was evidence in the record to support the proffered instruction. If such evidence is present, we finally determine whether the substance of the tendered instruction was covered by other instructions. *Stahl v. State*, 616 N.E.2d 9 (Ind. 1993).

■ Appellant claims that the trial court erroneously refused his Proposed Instruction Number Seven, which provided:

> A person who aids, induces, or causes another to commit an offense is just as guilty of that offense as if he committed it himself.

> You may find that Defendant [is] guilty of robbery[,] conspiracy or murder if you find beyond a reasonable doubt that the prosecutor has proved that another person actually committed the offense with which the Defendant is charged and that the Defendant aided; [sic] induced or caused that person to commit the offense.

> The first requirements [sic] is that you find that another person has committed the crime charged. Obviously, no one can be convicted of aiding[,] inducing or causing the criminal acts of another if no crime was committed by the other person in the first place. But if you do find that a crime was committed, then you must consider whether the Defendant aided, induced or caused the commission of the crime. In order to aid, induce or cause another to commit a crime, it is necessary that the Defendant knowingly or intentionally associate himself in some way with the crime and that he knowingly or intentionally seek by some act to help make[] the crime succeed.

> The mere presence of a Defendant where a crime is being committed, even coupled with knowledge by the Defendant that a crime is being committed, or the mere acquiescence by a Defendant in the criminal conduct of others, even with guilty knowledge, is not sufficient to establish aiding, inducing or causing a crime. You must not convict the defendant of aiding,

inducing or causing an offense unless you find beyond a reasonable doubt that the Defendant knowingly or intentionally participated in some conduct of an affirmative nature.

(R. at 124).

The trial court properly refused this instruction, because it addressed points of law already covered in other instructions. Instruction Twenty–Six provided a more concise presentation of the offense of aiding, inducing, or causing:

> Aiding, inducing or causing an offense is defined by statute as follows:

> A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person has not been prosecuted for the offense, has not been convicted of the offense, or has been acquitted of the offense.

(R. at 204).

Other instructions addressed other points of law contained in Appellant's Proposed Instruction Number Seven. For example, Final Instruction Twenty–Seven advised the jury as to the State's burden of proof in demonstrating that a defendant is guilty of aiding or inducing. (R. at 205). Final Instruction Twenty–Eight listed factors that the jury could use to infer a defendant's participation in a crime. (R. at 205). Final Instruction Twenty–Eight explicitly stated that "[m]ere presence at the scene of the crime is not sufficient to allow an inference of participation." (R. at 207). The court's final instructions addressed the substance of Appellant's Proposed Instruction Number Seven. No error occurred in the trial court's decision to refuse the instruction.

■ Appellant next contends that the trial court erred in refusing his Proposed Instruction Number Nine, which provided:

> You have heard testimony from several state's witnesses who have received immunity. That testimony was given in exchange for a promise by the State of Indiana that *they would not be prosecuted;* that their testimony will not be used against them.

In evaluating their testimony, you should consider whether that testimony may have been influenced by the State's promise of immunity given in exchange for it, and you should consider that testimony with greater caution than that of other witnesses.

(R. at 127) (emphasis added).

When the trial court initially refused this proposed instruction, Appellant objected. (R. at 1322–26). The prosecution then noted that the proposed instruction mischaracterized the State's agreement with the witnesses. The State had extended to the witnesses only a limited immunity, a form of use and derivative use immunity, promising only that, if the witnesses were subject to a subsequent prosecution, the testimony that the witnesses gave at Appellant's trial, and evidence obtained derivatively from that testimony would not be used against them. Appellant's Proposed Instruction Number Nine advises the jury not only that these witnesses had the more limited use immunity, but that these witnesses had also received a form of transactional immunity, *i.e.,* in exchange for the witnesses' testimony those witnesses *"would not be prosecuted"* for charges arising out of the transaction or occurrence to which their testimony refers. These are factually very different types of immunity, use-and-derivative-use immunity perhaps encouraging witnesses to be candid and forthcoming with their testimony and, thus, limiting the evidence available at that witnesses' subsequent trial. These witnesses did not have transactional immunity from prosecution for their acts in these crimes. Appellant's instruction advises the jury that the witnesses did obtain such immunity. Appellant's Proposed Instruction Number Nine materially misstates the nature of the immunity the witnesses enjoyed; the trial court properly declined to present the instruction to the jury.

■ Appellant next argues that some of the instructions that the jury did receive were improper. We have previously noted that instructing the jury lies within the discretion of the trial court. *Marshall v. State,* 621 N.E.2d 308, 320 (Ind.1993). We will reverse on the trial court's decision to instruct the jury only if the instruction given

constitutes an abuse of discretion. *Crabtree v. State,* 547 N.E.2d 286 (Ind.Ct.App.1989). The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury, and to enable the jury to comprehend the case clearly and arrive at a just, fair, and correct verdict. *Jackson v. State,* 575 N.E.2d 617, 621 (Ind.1991). Jury instructions must be read as a whole; if they state the law fully and correctly when read as a whole, they are not erroneous. *McCullough v. State,* 608 N.E.2d 1009, 1010 (Ind.Ct. App.1993).

■ Appellant Hartman argues that the trial court erred in giving Final Instruction Number Ten to the jury. Number Ten read:

If you decide that an overt act was done for the purpose of carrying out the conspiracy, it does not matter whether the defendant personally took part in that act, because once you have decided that the defendant was a member of the conspiracy, that defendant is responsible for what the other conspirators said or did to carry out the conspiracy, whether the defendant knew what they said or did or did not know.

(R. at 188).

Appellant argues that this instruction inappropriately shifts the burden of proof to him. We do not believe that the instruction has that effect. A plain reading of Instruction Ten reveals no advice on the burden of proof. The jury was advised, in a cogent, precise fashion, as to the State's burden of proof via several other instructions. Instruction Seven informed the jury of what the State was required to prove in order for the jury to find Appellant guilty of participating in the Conspiracy to Commit Robbery, explicitly stating the State's burden of proof. By contrast, Final Instruction Ten conveyed to the jury a long-held tenet of Indiana evidentiary law, that "the acts or statements of the parties to a conspiracy undertaken or made in furtherance of the objectives of the conspiracy are admissible against all the parties to the conspiracy, even though the statements have been made or the acts performed in the absence of the defendant." *Simpson v. State,* 628 N.E.2d 1215 (Ind.Ct.App.1994).

Final Instruction Number Ten merely informed the jury that the acts of other co-conspirators are attributed to the defendant if the jury determines that a conspiracy existed, and the jury determines that the action in question was in furtherance of the conspiracy. The trial court properly gave Final Instruction Number Ten to the jury.

■ Appellant's final jury instruction claim challenges the propriety of Final Instruction Number Twenty–Six. That instruction provided:

Aiding, inducing or causing an offense is defined by statute as follows:

A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person has not been prosecuted for the offense, has not been convicted of the offense, or has been acquitted of the offense.

Appellant again argues that this instruction shifts the burden of proof from the State to Appellant. We disagree. Final Instruction Number Twenty–Six merely restates the language of the aiding/inducing statute, I.C. § 35–41–2–4. Twenty–Six is silent regarding who bears the burden of proof. However, Final Instruction Number Twenty–One is not so mute on the burden of proof. Twenty–One directed the jury that *"the burden is upon the State of Indiana to prove all the material allegations of the information beyond a reasonable doubt"* before the state would be entitled to the defendant's conviction. (R. at 199) (emphasis added). Final Instruction Number Twenty–Two explains further the burden of proof:

In this case the defendant is presumed to be innocent until proven guilty *beyond a reasonable doubt,* and this presumption prevails until the conclusion of trial, and you should weigh the evidence in the light of this presumption of innocence and it should be your endeavor to reconcile all the evidence with this presumption of innocence if you can, but if this cannot be done, and the evidence so strongly tends to establish the guilt of the defendant as to remove all reasonable doubt of the guilt of such defendant, from the mind of each

juror, then it is the duty of the jury to convict.

(R. at 200) (emphasis added).

To further direct the jury on the burden of proof, Instruction Number Twenty–Three defined reasonable doubt. These instructions, when read as a whole, made it clear to the jury that it was the State's burden to prove any and all allegations beyond a reasonable doubt in order to convict Appellant. The trial court properly gave Final Instruction Number Twenty–Six to the jury.

■ Lastly, Appellant contends that the State did not present sufficient evidence to support his conviction. The appellate test for sufficiency of the evidence requires that the reviewing court neither reweigh the evidence nor resolve questions of credibility, because those are matters exclusively within the province of the jury. *Tillman v. State,* 642 N.E.2d 221, 223 (Ind.1994). Rather, the reviewing court considers the evidence and the reasonable inferences therefrom to determine whether a reasonable trier of fact could have found a defendant guilty beyond a reasonable doubt. If each element of the crime is supported by sufficient evidence, then we will affirm. *Id.* The reviewing court looks at the evidence most favorable to the verdict and the reasonable inferences to be drawn therefrom to make this determination. *Tunstill v. State,* 568 N.E.2d 539, 541 (Ind. 1991).

■ Here, the State presented ample evidence supporting the Murder, Robbery, and the Conspiracy to Commit Robbery convictions. Mark Sekse last saw David Turner, the victim, with Appellant, after Sekse and Turner delivered marijuana to Appellant. Witnesses testified that Appellant's co-conspirator beat Turner with a table leg. Evidence demonstrated that Appellant took the marijuana from Turner, after subduing Turner. Witnesses testified that Appellant and coconspirators disposed of Turner's body in a field. While not necessary to support the conviction, the State's witnesses provided evidence of motive, testifying that Appellant needed the proceeds from this robbery to leave town in order to further his plan to avoid a pending sentencing hearing on unre-

lated criminal charges. Co-conspirators testified that Appellant planned, with them, to beat Turner and take the marijuana from him.

Appellant argues that the evidence also supports his alternative theory of events, and, citing extensively to his own self-serving testimony, attempts to demonstrate that it is possible that he did not commit these crimes. However, the jury has had an opportunity to assess Appellant's credibility, as well as that of the other witnesses. On appellate review, we examine the evidence favorable to the verdict and the reasonable inferences therefrom to determine the sufficiency of the evidence. *Tunstill,* 568 N.E.2d at 541. The State presented sufficient evidence for the jury to conclude that each element of the crimes charged existed beyond a reasonable doubt.

Because Appellant raises no reversible error, the trial court is in all respects affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON and SULLIVAN, JJ., concur.