Ronnie HOLDEN, Appellant
(Defendant),

v.

STATE of Indiana, Appellee (Plaintiff).

No. 49S02–0202–CR–153.

Supreme Court of Indiana.

May 30, 2003.

Gregory Bowes, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**CRIMINAL TRANSFER**

RUCKER, Justice.

### Case Summary

After a trial by jury Ronnie Holden was convicted of three counts of forgery as Class C felonies and one count of forgery as a Class D felony. Holden appealed raising several issues for review. All were rejected by the Court of Appeals, which affirmed the trial court's judgment in an unpublished Memorandum Decision. *Holden v. State*, No. 49A02–0101–CR–44, 756 N.E.2d 1092 (Ind.Ct.App. Aug.29, 2001). We agree the judgment of the trial court should be affirmed. Having previously granted transfer, we now address one of the issues Holden raises for our consideration.

### Discussion

Article I, Section 19 of the Indiana Constitution provides "In all criminal cases whatever, the jury shall have the right to determine the law and the facts." Holden argues the trial court erred in refusing to give an instruction advising the jury, among other things, "[w]hile this provision does not entitle you to return false verdicts, it does allow you the latitude to refuse to enforce the law's harshness when justice so requires." Appellant's App. at 61. Holden's argument is inspired at least in part by a Law Review article written by the author of this opinion. *See* Honorable Robert D. Rucker, *The Right to Ignore the Law: Constitutional Entitlement Versus Judicial Interpretation*, 33 Val. U.L.Rev. 449 (1999). Tracing the history of the doctrine that allowed juries to determine both the law and the facts in criminal cases, the article reached several conclusions. One conclusion was that "an instruction telling the jury that the constitution intentionally allows them latitude to 'refuse to enforce the law's harshness when justice so requires' would be consistent with the intent of the framers and

give life to what is now a dead letter provision." *Id.* at 481 (footnote omitted).

The general thrust of the article is that Article I, Section 19 amounts to a constitutionally permissible form of jury nullification. That is, under the Indiana Constitution the jury has the right to return a verdict of not guilty despite the law and the evidence where a strict application of the law would result in injustice and violate the moral conscience of the community. Although jury nullification has been variously defined, this is its central tenet. *See, e.g.,* Jeffrey Abramson, *We, The Jury* 57 (1994) (defining nullification as the jurors' "right to refuse to enforce the law against defendants whom they believe in good conscience should be acquitted"); Clay S. Conrad, *Jury Nullification: The Evolution of a Doctrine* 7 (1998) (defining nullification as the jurors' "right to refuse to convict if they believe that a conviction would be in some way unjust"); Irwin A. Horowitz, et al., *Jury Nullification: Legal and Psychological Perspectives* 66 Brook. L.Rev. 1207, 1208 (2001) (defining the term as the "power to acquit defendants despite evidence and judicial instructions to the contrary" and noting that its purpose is to "return an acquittal when strict interpretation of the law would result in an injustice and violate the moral conscience of the community").

It is historically accurate to say that a jury's right in a criminal case to "determine the law and the facts" has a long and distinguished history that can be traced from medieval England through the seditious libel trial of New York publisher John Peter Zenger. *See generally* Rucker, *supra,* at 449–55. It is also true that early case authority in this state stood for the proposition that the jury's law determining function meant that the jury could "disregard" the instructions of the trial court. However, on closer examination it

appears that the right to disregard the trial court's instructions has never been equated as a right to disregard "the law." This point is best illustrated by a case decided forty-one years after Article I, Section 19 was ratified. The trial court gave the following instruction:

> You, gentlemen, in this case, are the judges of law as well as of the facts. You can take the law as given and explained to you by the court, but, if you see fit, you have the legal and constitutional right to reject the same, and construe it for yourselves.

*Blaker v. State,* 130 Ind. 203, 29 N.E. 1077 (1892). On appellate review the Supreme Court approved the instruction but admonished, "the Constitution gives to juries in criminal cases the right to *determine* the law as well as the facts. It does not, however, give to them the right to *disregard* the law." *Id.* at 204–05, 29 N.E. 1077.

In the early days of the republic there was much debate over whether under federal jurisprudence a jury had the right to "determine the law" in a criminal case. A number of cases held that indeed the jury had such a right, if not under the Federal Constitution, then at least under the federal common law. *See, e.g.,* Mark DeWolfe Howe, *Juries as Judges of Criminal Law,* 52 Harv. L.Rev. 582, 589 (1939) (noting that federal courts until 1835 had consistently instructed juries that they were "the judges of both the law and the fact in a criminal case, and are not bound by the opinion of the court.") (footnote omitted). However, in *Sparf v. United States,* 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343 (1895), the Supreme Court put to rest any notion of a jury's right to determine the law. Although an exhaustive and painstaking dissent took the majority to task for its decision, even the dissent maintained that the jury was required to "decide by the

law as they know or believe it to be." *Id.* at 172, 15 S.Ct. 273, 39 L.Ed. 343 (Gray, J., dissenting).

Apart from case authority, recent scholarly literature also sheds light on the meaning and scope of a jury's right to determine the law in criminal cases. For example one commentator has observed, "Although Eighteenth Century juries were invited to find both law and facts and not feel bound by the interpretation of the law offered by trial judges, they were admonished to apply the law as they understood it. The independence of jurors in this regard did not countenance deciding disputes in total disregard of the applicable common or other law." Lars Noah, *Civil Jury Nullification,* 86 Iowa L.Rev. 1601, 1620 (2001) (footnote omitted). Another commentator noted "the right to decide the law was neither equivalent to today's proposed right to nullify, nor did it encompass the right to nullify. To the contrary, the right to decide the law swept narrowly, placing a clear duty on juries to follow the law as they saw it, rather than reject the law as pro-nullification scholars would have them do." David A. Pepper, *Nullifying History: Modern–Day Misuse of the Right to Decide the Law,* 50 Case W. Res. L.Rev. 599, 609 (2000).

Although there may be some value in instructing Indiana jurors that they have a right to "refuse to enforce the law's harshness when justice so requires," the source of that right cannot be found in Article I, Section 19 of the Indiana Constitution. This Court's latest pronouncement on the subject is correct: "[I]t is improper for a court to instruct a jury that they have a right to disregard the law. Notwithstanding Article 1, Section 19 of the Indiana Constitution, a jury has no more right to ignore the law than it has to ignore the facts in a case." *Bivins v. State,* 642 N.E.2d 928, 946 (Ind.1994) (citation omit-

ted). The trial court in this case properly refused to give Holden's tendered instruction.

### Conclusion

We grant transfer and affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.