ATTORNEY FOR APPELLANT
Kelly N. Bryan
Muncie, Indiana

ATTORNEYS FOR APPELLEE
Stephen R. Carter
Attorney General of Indiana

Gary Damon Secrest
Deputy Attorney General
Indianapolis, Indiana



# In the
# Indiana Supreme Court

No. 18S02-0710-CR-458

LARRY C. WALDEN,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Delaware Circuit Court No. 1, No. 18C01-0402-FC-08
The Honorable Marianne L. Vorhees, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 18A02-0605-CR-420

**October 20, 2008**

**Sullivan, Justice.**

Larry Walden and his fiancée, Molly Arthur, were in an auto accident in which Walden's truck swerved off the road and ended upside-down in a ditch. Walden managed to crawl out of the truck, but Arthur later died from her injuries. A jury found Walden guilty of the crime of Causing Death When Operating a Motor Vehicle with a Schedule I or II Controlled Substance in

Blood.  After returning its verdict at the conclusion of the "guilt phase" of the trial, a "habitual offender phase" of the trial followed pursuant to procedures authorized by the Legislature for punishing repeat offenders.  At its conclusion, the jury also found Walden to be a "habitual offender."  He was sentenced to 20 years in prison, plus a habitual offender sentence enhancement of 30 years.

Walden raised four issues on appeal: whether the State had proved a sufficient foundation for the reliability of the scientific principles used by two expert witnesses as a basis for their testimony; whether the State proved Walden's previous convictions to the extent necessary to establish that he was a "habitual offender"; whether the trial court improperly rejected Walden's proposed jury instruction concerning the jury's authority not to find him to be a habitual offender; and whether Walden's sentence was inappropriate in light of the nature of the offense and the character of the offender.  The Court of Appeals affirmed the trial court in all respects. Walden v. State, No. 18A02-0605-CR-420, slip op. (Ind. Ct. App. May 10, 2007).  Walden petitioned for, and we granted, transfer.  Walden v. State, 878 N.E.2d 216 (Ind. 2007) (table). We now address Walden's claim that the trial court improperly rejected his proposed jury instruction.  In all other respects, we summarily affirm the Court of Appeals.  Ind. Appellate Rule 58(A).

## Discussion

Indiana Code § 35-37-2-2(5) (2004) requires a trial court to instruct the jury that the jury has the right to determine the facts and the law in a criminal case.  It reads in part: "In charging the jury, the court must state to them all matters of law which are necessary for their information in giving their verdict. The judge shall inform the jury that they are the exclusive judges of all questions of fact, and that they have a right, also, to determine the law."  This right, of course, extends to the criminal habitual offender sentencing phase.  The language of I.C. § 35-37-2-2(5) tracks that of article I, section 19, of our State's Constitution: "In all criminal cases whatever, the jury shall have the right to determine the law and the facts."

1

We have previously acknowledged the possibility, in the context of article I, section 19, that such a provision might be seen as a permissible form of jury nullification.[1] Holden v. State, 788 N.E.2d 1253, 1253-54 (Ind. 2003). However, Holden distinguished between a jury's historical right to determine the law and what the jury may not do; that is, to disregard the law. Id. at 1254-55. In Holden, we made clear that Indiana juries do not have a broad, general nullification power in criminal cases.

The present case requires us to discuss a particular feature of the jury instruction requirement contained in I.C. § 35-37-2-2(5). When a jury is evaluating a defendant's habitual offender status, the jury is afforded slightly more leeway than Holden authorizes in the guilt phase. In Holden, the defendant appealed his conviction for forgery on grounds that the trial court had improperly refused to instruct the jury that article I, section 19, "allow[ed] [it] the latitude to refuse to enforce the law's harshness when justice so requires." Holden, 788 N.E.2d at 1253. We held that such an instruction found no basis in the Indiana Constitution. Id. at 1255. A few years earlier, however, we had held in Seay v. State that a jury may make a habitual offender determination "irrespective of the uncontroverted proof of prior felonies." 698 N.E.2d 732, 737 (Ind. 1998). We write today to clarify the jury's role in a habitual offender determination in light of our decisions in Holden and Seay.

The State may seek to have a person convicted of a felony sentenced as a habitual offender if that person has been previously convicted of two prior unrelated felonies. If the felony conviction is by a jury, the Legislature requires that the jury reconvene to determine that the State has proved beyond a reasonable doubt the two prior unrelated felony convictions that support a habitual offender determination. I.C. § 35-50-2-8(a), (f), (g). The stakes are high for a criminal defendant in such a proceeding: A defendant found to be a habitual offender may be sentenced – as Walden was here – to up to 30 years of additional time in prison. Id. § 8(h).

---

[1] Jury nullification is "[a] jury's knowing and deliberate rejection of the evidence or refusal to apply the law either because the jury wants to send a message about some social issue that is larger than the case itself or because the result dictated by law is contrary to the jury's sense of justice, morality, or fairness." Black's Law Dictionary 875 (8th ed. 2004).

We believe that it is precisely because the stakes are so high in the habitual offender phase of a trial that the Legislature has ordered a jury trial to determine habitual offender status.[2] For many years, Justice Dickson urged this Court to acknowledge that if the Legislature had intended for three qualifying convictions automatically to result in a habitual offender determination, the Legislature would not have included a jury trial on that question in the sentencing phase. Duff v. State, 508 N.E.2d 17, 23 (Ind. 1987) (Dickson, J., dissenting in part); Hensley v. State, 497 N.E.2d 1053, 1058 (Ind. 1986) (Dickson, J., concurring and dissenting); Mers v. State, 496 N.E.2d 75, 79 (Ind. 1986). We did so in Seay, 698 N.E.2d at 736 ("After careful review and analysis, we now explicitly adopt the principles enunciated by Justice Dickson in his opinions in Mers, Hensley, and Duff. If the legislature had intended an automatic determination of habitual offender status upon the finding of two unrelated felonies, there would be no need for a jury trial on the status determination.").

It is the fact, we said in Seay, that the habitual offender phase is a "status determination" that makes all the difference. When, as in Holden, the jury is making a determination of guilt or innocence, the law may not be disregarded by the jury. However, in the habitual offender phase, Seay dictates that – on the basis that the Legislature has ordered a jury trial to determine habitual offender status – the jury is entitled to make a status determination over and above its determination of whether the predicate offenses have been established. Because the nature of status is different than guilt for a particular crime, the interplay between the habitual offender statute, I.C. § 35-50-2-8, and the umbrella "law and the facts" statute, I.C. § 35-37-2-2(5), operates to give a jury latitude in defining habitual offender status in a way that it does not in defining guilt or innocence.

In Seay, we wrote, "[i]mplicit in this holding is the principle that during the habitual offender phase, art. I, § 19 does apply." Seay, 698 N.E.2d at 736. This statement was not

---

[2] While there has been a school of thought that the U.S. Constitution requires a jury to determine habitual offender status, see, e.g., Shepard v. United States, 544 U.S. 13, 27 (2005) (Thomas, J., concurring), and Almendarez-Torres v. United States, 523 U.S. 224, 248 (1998) (Scalia, J., dissenting), that position has now been squarely rejected by the U.S. Supreme Court in James v. United States, 127 S. Ct. 1586, 1600 n.8 (2007). We predicted this result in Smith v. State, 825 N.E.2d 783, 789 (Ind. 2005).

necessary to our holding in Seay because the effect of the interaction of the habitual offender statute, I.C. § 35-50-2-8, and the umbrella "law and the facts" statute, I.C. § 35-37-2-2(5), was sufficient to sustain the holding. We need not and should not have identified the Indiana Constitution as additional support for the holding and consider those comments to be obiter dicta. The authority given by the Legislature to determine both habitual offender status and the law and the facts provides the basis for the holding in Seay, independent of the State Constitution.

During the habitual offender phase of his trial, Walden asked the trial court to give his Jury Instruction No. 1, which read: "Even where the jury finds the facts of the prerequisite prior felony convictions to be uncontroverted, the jury still has the unquestioned right to refuse to find the Defendant to be a habitual offender at law." (App. 253.) The trial court refused this instruction, and instead instructed the jury with the trial court's Jury Instruction No. 2: "Under the Constitution of Indiana you have the right to determine both the law and the facts. The Court's instructions are your best source in determining the law." (R. at 649; App. 261.) The trial court also gave Jury Instruction No. 3, as follows:

> Count 4 of the Information in this case charges the Defendant with being an Habitual Offender. The applicable statute reads in part as follows:
> The State may seek to have a person sentenced as an habitual offender for any felony by proving that the person has accumulated two (2) prior unrelated felony convictions.
> You may find the Defendant to be an habitual offender only if the State has proven each of the [two previous offenses and the current offense] beyond a reasonable doubt.:
> . . .
> If the State failed to prove these elements beyond a reasonable doubt, you must find the Defendant is not an habitual offender.

(App. 262.)

When a party has challenged a trial court's refusal of a tendered jury instruction, the court on appeal performs a three-part evaluation. First, we ask whether the tendered instruction is a correct statement of the law. Second, we examine the record to determine whether there was evidence present to support the tendered instruction. (This part of the test is not at issue in this

4

case.)  Third, we determine whether the substance of the tendered instruction was covered by another instruction or instructions.  Hartman v. State, 669 N.E.2d 959, 960-61 (Ind. 1996).  This evaluation is performed in the context of determining whether the trial court abused its discretion when it rejected the instruction.  Id. at 962.

On the question of whether Walden's tendered instruction was a correct statement of the law, the parties are in agreement.  Walden points out that his instruction reflects almost verbatim the holding of our Court in Seay, 698 N.E.2d at 734.  Walden is correct that in Seay, we said that "even where the jury finds the facts of the prerequisite prior felony convictions to be uncontroverted, the jury still has the unquestioned right to refuse to find the defendant to be a habitual offender at law."  Id. (citations omitted).  The State concedes in its brief that the tendered instruction was a correct statement of the law.

Under the third part of the analysis of a trial court's refusal of a jury instruction, we ask whether another instruction covered the material covered by the rejected instruction.  Simply stated, the jury was instructed on its right to determine the facts and law of the case.  That the jury has more latitude in making a habitual offender determination than in determining guilt or innocence does suggest that the guilt phase "law and the facts" instruction might warrant advising the jury that it has the right to determine habitual offender status without strict reliance on the number of felony convictions the defendant has accrued.  Such an advisement would not have been inappropriate.  But while explanation from us on this point was provided in Seay, and a broader jury instruction would not have been wrong, the trial court is certainly not obligated to issue an invitation to the jury to disregard prior convictions in addition to informing the jury of its ability to determine the law and the facts.  The substance of the information contained in the trial court's instruction and Walden's requested instruction is the same.[3]  This is especially true here, where the trial court emphasized in Jury Instruction No. 3 that the jury "*may*"—not must— find the defendant a habitual offender if the State has proved two prior unrelated felony convictions.  Such use of "may" in the instruction reinforced the jury's discretion; indeed, the only requirement placed upon the jury in Instruction No. 3 was "[I]f the State failed to prove

---

[3] While it was unnecessary, for the reasons discussed above, for the trial court to refer to the Indiana Constitution in its instruction, we perceive no possible prejudice to Walden.

these elements beyond a reasonable doubt, [the jury] *must* find the Defendant is *not* an habitual offender." (App. 262 (emphases added).) Because we evaluate the trial court's rejection of the instruction for an abuse of discretion, we cannot find that the trial court incorrectly instructed the jury on the law or improperly excluded mention of relevant law.

## Conclusion

The judgment of the trial court is affirmed with respect to Walden's proposed jury instruction No. 1. We summarily affirm the Court of Appeals as to other issues raised on appeal but not addressed in this opinion. App. R. 58(A).

Shepard, C.J., and Boehm, J., concur.

Rucker, J., dissents with separate opinion in which Dickson, J., concurs.

Dickson, J., dissents with separate opinion in which Rucker, J., concurs.

6

**Rucker, Justice, dissenting.**

The majority makes a distinction between "law and facts" jury instructions in the guilt and habitual offender phases of trial. Because I see little daylight in the wording of Indiana Code section 35-37-2-2(5) and the provisions of Article 1, Section 19, I respectfully dissent.

As the majority points out the wording of the statute tracks the language of our State Constitution: "In all criminal cases whatever, the jury shall have the right to determine the law and the facts." Ind. Const. Art. 1, § 19. The similarity in language between the two suggests that the analysis of how the provisions are to be applied should be similar as well. In Holden v. State, we held "[i]t is improper for a court to instruct a jury that they have a right to disregard the law. Notwithstanding Article 1, Section 19 of the Indiana Constitution, a jury has no more right to ignore the law than it has to ignore the facts in a case." Holden v. State, 788 N.E.2d 1253, 1255 (Ind. 2003) (quoting Bivins v. State, 642 N.E.2d 928, 946 (Ind. 1994)). As the author of Holden, I obviously have no quarrel with this holding. But, I view it as very narrow. That is to say, although Indiana juries have no right to disregard the law, under the clear wording of the Constitution they still have the right to determine the law. The questions implicated by this case are: (a) what does that right entail either in the context of the statutory provision or of the Constitution itself and (b) what should juries be told concerning that right.

Our decisions have made clear that Article 1, Section 19 does not grant the jury the power to decide all matters that may be correctly included under the generic label – "law." See Anderson v. State, 104 Ind. 467, 5 N.E. 711, 712 (1886) (declaring the jury is not the "sole judge[] of the law in every respect in a criminal cause"). For example, the jury's law determining function does not include the right to pass on questions concerning the admissibility of evidence, Sprague v. State, 203 Ind. 581, 181 N.E. 507, 512 (1932), or the right to make, repeal, disregard, or ignore clearly existing law. See Fleenor v. State, 514 N.E.2d 80, 87 (Ind. 1987); Hubbard v. State, 196 Ind. 137, 147 N.E. 323, 326 (1925). But, when deliberating on its verdict, the "law" that the jury is empowered to determine encompasses not only evaluating, among other things, the statutory elements of the offense – which it may not disregard – but also whether the legislature intended those elements to be applied to the facts presented. This is not

unlike the authority exercised by judges in employing canons of statutory construction, e.g., interpreting statutes to avoid absurd results or interpreting statutes according to their plain and ordinary meaning, to make sure that the substantive law as written does not become overreaching so as to defeat reasonable goals of justice.[4] Indeed, what may appear superficially to constitute nullification by jurors of the legal standards they have been instructed to apply may instead reflect jurors deciding whether guilt in a particular case would promote the justice values for which the statute is enacted. We have recognized a very similar proposition before:

> The jury have *no* right to base an acquittal upon their notion alone that the indictment is not sufficient; they have *no* right to determine that the indictment is not sufficient in form, or that it was not properly found and returned; they must act upon the law and the evidence, when the case comes before them. But they have the undoubted right, under the Constitution and the decisions of this court, to say that the facts in evidence *do not constitute a 'public offence,'* although those facts may be the same facts stated in the indictment. If this be not so, then the jury will be compelled to convict in all cases where the facts stated in the indictment are proved, *although they may think that the facts so proved do not constitute a public offence. This would be, practically, to take from the jury the right to pass upon the law in all cases*.

Pritchard v. State, 248 Ind. 566, 230 N.E.2d 416, 420 (1967) (emphasis in original) (quoting Hudelson v. State, 94 Ind. 426, 430 (1884)).

The Court has been clear about how all of this plays out in the habitual offender context. "[E]ven where the jury finds the facts of the prerequisite prior felony convictions to be uncontroverted, the jury still has the unquestioned right to refuse to find the defendant to be a habitual offender at law." Seay v. State, 698 N.E.2d 732, 734 (Ind. 1998) (citing Duff v. State, 508 N.E.2d 17, 24 (Ind. 1987) (Dickson, J., separate opinion)). However, other than declaring that the jury is entitled to be instructed on its Article 1, Section 19 authority, see Johnson v. State, 518 N.E.2d 1073, 1076 (Ind. 1988), the Court has not been very explicit about explaining the contours of that authority in the context of the guilt phase of a criminal trial.[5] And by today's

---

[4] "[W]hat is typically seen as nullification may be recast as jurors participating actively in a system designed to give them authority to determine that a law is inapplicable in a given situation." Lawrence M. Solan, *Jurors As Statutory Interpreters*, 78 Chi.-Kent L. Rev. 1281, 1283 (2003).

[5] The closest the Court has come is best illustrated by Cobb v. State, 274 Ind. 342, 412 N.E.2d 728, 741 (1980), in which the Court declared that to determine the law means that "jurors under their oaths should

2

decision the majority takes the view that the trial court's generic "law and facts" instruction is sufficient to advise the jury of its statutory authority in the habitual offender phase of trial. I respectfully disagree. Simply advising the jury that it has the right to determine the law and the facts falls woefully short of explaining how this right may be exercised. In contrast, Walden's tendered instruction fills this void. Quoting Seay, the instruction is a correct statement of the law and gives express guidance to a jury on what it means to determine the law in the habitual offender context. This aspect of the statute was not covered by any of the trial court's other instructions.

In like fashion, when requested, juries should be given similar guidance on its law determining function under Article 1, Section 19 in the guilt phase of trial. At a minimum this may be accomplished by advising the jury as follows:

> Even where the jury finds that the State has proven the statutory elements of the offense beyond a reasonable doubt, the jury still has the unquestioned right to determine whether in this case returning a verdict of guilty promotes fairness and the ends of justice.

It is clear that the jury already has the unreviewable power to acquit even where the facts point in the other direction, and a trial judge cannot direct a verdict of guilty "no matter how overwhelming the evidence." Sullivan v. Louisiana, 508 U.S. 275, 277 (1993); accord Peck v. State, 563 N.E.2d 554, 560 (Ind. 1990). Informing the jury that it has such power under the Indiana Constitution would be consistent with our holding in Seay – even assuming the case involved only a statutory provision – and would breathe life into what otherwise too often has been treated as a dead letter constitutional provision.

Dickson, J., concurs.

---

honestly, justly, and impartially judge the law as it exists." In essence to determine the law means to determine the law.

**Dickson, Justice, dissenting.**

I join Justice Rucker's separate dissenting opinion and add the following additional reasons for my disagreement with the majority opinion.

First, I disagree with the majority's understanding of Holden v. State, 788 N.E.2d 1253, 1253-54 (Ind. 2003). Although not part of the majority's actual holding but only reflected in its preliminary commentary, today's opinion expresses a view that Holden stands for the proposition that Indiana juries do not have the power to acquit despite overwhelming evidence in criminal cases. To the contrary, I believe that this Court unanimously acknowledged in Holden that our state's early jurisprudence held that, in the exercise of its law-determining function under Article 1, Section 19 of the Indiana Constitution, a jury could disregard the instructions of the trial court, but had no right to disregard the law. *Id*. at 1254, *citing* Blaker v. State, 130 Ind. 203, 204, 29 N.E. 1077, 1077-78 (1892). Our analysis in Holden also noted recent views from other jurisdictions and discussed recent academic literature arguing that a jury's right to decide the law did not encompass the right to nullify. Holden, 788 N.E.2d at 1255. Holden did not attempt to resolve these competing perspectives, but rather issued a narrow holding focused on the propriety of expressly advising the jury that "you [have] the latitude to 'refuse to enforce the law's harshness when justice so requires,'" an instruction that had been tendered but refused. *Id*. at 1253. We held only that a jury should not be affirmatively instructed that it has a right to disregard the law, and that the tendered instruction was properly refused. In my view, however, Holden does not prohibit Indiana juries from exercising their historic power to find in favor of a criminal defendant despite substantial contrary evidence.

Second, I disagree with the majority's minimization of the important role of Article 1, Section 19 of the Indiana Constitution in this Court's unanimous opinion in Seay v. State, 698 N.E.2d 732 (Ind. 1998). To the contrary, Seay declared "we now explicitly adopt the principles enunciated by . . . [the dissent in] . . . Hensley," which Seay expressly acknowledged "reiterated the principle established in art. I, § 19, providing the jury the power to determine the law and the facts." Seay, 698 N.E.2d at 735-36, *citing* Hensley v. State, 497, N.E.2d 1053, 1058 (Ind. 1986) (Dickson, J. dissenting). In a case decided contemporaneously with Seay, Justice Sullivan

likewise wrote for a unanimous court that "In <u>Seay</u>, we *definitively established that Article 1, §19 is applicable* during habitual offender proceedings, and thus the jury has the power in such circumstances to determine both the law and the facts." <u>Parker v. State</u>, 698 N.E.2d 737, 742 (Ind. 1998) (emphasis added). And numerous subsequent appellate decisions have noted <u>Seay</u> as applying the principles of Article 1, Section 19. <u>State v. Barker</u>, 826 N.E.2d 648, 649 (Ind. 2005); <u>McBride v. State</u>, 785 N.E.2d 312, 316-17 (Ind. Ct. App. 2003), *trans. denied*; <u>Flake v. State</u>, 767 N.E.2d 1004, 1007 (Ind. Ct. App. 2002), *trans. not sought*; <u>Smock v. State</u>, 766 N.E.2d 401, 408 (Ind. Ct. App. 2002), *trans. not sought*; <u>Gonzalez v. State</u>, 757 N.E.2d 202, 204-205 (Ind. Ct. App. 2001), *trans. denied*; <u>Womack v. State</u>, 738 N.E.2d 320, 326 (Ind. Ct. App. 2000), *trans. denied*.

Third, the majority acknowledges that the rejected jury instruction was a correct statement of law, but declares that it would have been inappropriate to inform the jury of this legal principle because of the effect it might produce. As correctly stated in the requested but refused instruction, "Even where the jury finds the facts of the prerequisite prior felony convictions to be uncontroverted, the jury still has the unquestioned right to refuse to find the Defendant to be a habitual offender at law." Appellant's App'x at 253. But the majority concludes that the substance of this instruction was adequately communicated to the jury by the following instruction: "[Y]ou have the right to determine both the law and the facts. The Court's instructions are your best source in determining the Law." *Id.* at 261. I cannot agree that this latter, broad, unspecific, and opaque instruction was adequate to inform the jury of the legal principal embodied in the defendant's tendered instruction—a principal that was at the heart of the defendant's defense on the habitual offender count.

Innocuous, generic, non-specific jury instructions are not an adequate substitute for plain-language advisements that meaningfully explain to jurors the reality of their rights and permissible function under the law.[6] In my view, the resulting obfuscation and secrecy is inconsistent with the Rule of Law.

---

[6] Retired Arizona trial judge B. Michael Dann has recently explored this issue, expressing the view that "jurors deserve better and need more regarding the role the Constitution has in mind for them." B. Michael Dann, "<u>Must Find the Defendant Guilty</u>" Jury Instructions Violate the Sixth Amendment, 91 Judicature 12, 17 (July-Aug. 2007). He advocates use of an instruction that would "impress upon jurors

Because I believe that the defendant was entitled to have the jury meaningfully instructed regarding its right to find in favor of a criminal defendant despite substantial contrary evidence, a historic right of American juries and one additionally preserved in Section 19 of the Indiana Bill of Rights, I dissent from the majority's opinion.

Rucker, J., concurs.

---

that the law applicable to the case comes from the judge, that the law should be given serious consideration, and that the power to acquit despite the law should be reserved for exceptionable cases that present jurors with strong issues of conscience." *Id.* at 18.