SULLIVAN, Justice.
Larry Walden and his fiancée, Molly Arthur, were in an auto accident in which Walden’s truck swerved off the road and ended upside-down in a ditch. Walden managed to crawl out of the truck, but Arthur later died from her injuries. A jury found Walden guilty of the crime of Causing Death When Operating a Motor Vehicle with a Schedule I or II Controlled Substance in Blood. After returning its verdict at the conclusion of the “guilt phase” of the trial, a “habitual offender phase” of the trial followed pursuant to procedures authorized by the Legislature for punishing repeat offenders. At its conclusion, the jury also found Walden to be a “habitual offender.” He was sentenced to 20 years in prison, plus a habitual offender sentence enhancement of 30 years.
Walden raised four issues on appeal: whether the State had proved a sufficient foundation for the reliability of the scientific principles used by two expert witnesses as a basis for their testimony; whether the State proved Walden’s previous convictions to the extent necessary to establish that he was a “habitual offender”; whether the trial court improperly rejected Walden’s proposed jury instruction concerning the jury’s authority not to find him to be a habitual offender; and whether Walden’s sentence was inappropriate in light of the nature of the offense and the character of the offender. The Court of Appeals affirmed the trial court in all respects. Walden v. State, No. 18A02-0605-CR-420, slip op., 2007 WL 1365117 (Ind.Ct.App. May 10, 2007). Walden petitioned for, and we granted, transfer. Walden v. State, 878 N.E.2d 216 (Ind.2007) (table). We now *1184 address Walden’s claim that the trial court improperly rejected his proposed jury instruction. In all other respects, we summarily affirm the Court of Appeals. Ind. Appellate Rule 58(A).
Discussion
Indiana Code § 35-37-2-2(5) (2004) requires a trial court to instruct the jury that the jury has the right to determine the facts and the law in a criminal case. It reads in part: “In charging the jury, the court must state to them all matters of law which are necessary for their information in giving their verdict. The judge shall inform the jury that they are the exclusive judges of all questions of fact, and that they have a right, also, to determine the law.” This right, of course, extends to the criminal habitual offender sentencing phase. The language of I.C. § 35-37-2-2(5) tracks that of article I, section 19, of our State’s Constitution: “In all criminal cases whatever, the jury shall have the right to determine the law and the facts.”
We have previously acknowledged the possibility, in the context of article I, section 19, that such a provision might be seen as a permissible form of jury nullification.[1] Holden v. State, 788 N.E.2d 1253, 1253-54 (Ind.2003). However, Holden distinguished between a jury’s historical right to determine the law and what the jury may not do; that is, to disregard the law. Id. at 1254-55. In Holden, we made clear that Indiana juries do not have a broad, general nullification power in criminal cases.
The present case requires us to discuss a particular feature of the jury instruction requirement contained in I.C. § 35-37-2-2(5). When a jury is evaluating a defendant’s habitual offender status, the jury is afforded slightly more leeway than Holden authorizes in the guilt phase. In Holden, the defendant appealed his conviction for forgery on grounds that the trial court had improperly refused to instruct the jury that article I, section 19, “allow[ed][it] the latitude to refuse to enforce the law’s harshness when justice so requires.” Holden, 788 N.E.2d at 1253. We held that such an instruction found no basis in the Indiana Constitution. Id. at 1255. A few years earlier, however, we had held in Seay v. State that a jury may make a habitual offender determination “irrespective of the uncontroverted proof of prior felonies.” 698 N.E.2d 732, 737 (Ind.1998). We write today to clarify the jury’s role in a habitual offender determination in light of our decisions in Holden and Seay.
The State may seek to have a person convicted of a felony sentenced as a habitual offender if that person has been previously convicted of two prior unrelated felonies. If the felony conviction is by a jury, the Legislature requires that the jury reconvene to determine that the State has proved beyond a reasonable doubt the two prior unrelated felony convictions that support a habitual offender determination. 1.C. § 35-50-2-8(a), (f), (g). The stakes are high for a criminal defendant in such a proceeding: A defendant found to be a habitual offender may be sentenced — as Walden was here — to up to 30 years of additional time in prison. Id. § 8(h).
We believe that it is precisely because the stakes are so high in the habitual offender phase of a trial that the Legislature has ordered a jury trial to determine habitual offender status.[2] For many *1185 years, Justice Dickson urged this Court to acknowledge that if the Legislature had intended for three qualifying convictions automatically to result in a habitual offender determination, the Legislature would not have included a jury trial on that question in the sentencing phase. Duff v. State, 508 N.E.2d 17, 23 (Ind.1987) (Dickson, J., dissenting in part); Hensley v. State, 497 N.E.2d 1053, 1058 (Ind.1986) (Dickson, J., concurring and dissenting); Mers v. State, 496 N.E.2d 75, 79 (Ind.1986). We did so in Seay, 698 N.E.2d at 736 (“After careful review and analysis, we now explicitly adopt the principles enunciated by Justice Dickson in his opinions in Mers, Hensley, and Duff. If the legislature had intended an automatic determination of habitual offender status upon the finding of two unrelated felonies, there would be no need for a jury trial on the status determination”).
It is the fact, we said in Seay, that the habitual offender phase is a “status determination” that makes all the difference. When, as in Holden, the jury is making a determination of guilt or innocence, the law may not be disregarded by the jury. However, in the habitual offender phase, Seay dictates that — on the basis that the Legislature has ordered a jury trial to determine habitual offender status — the jury is entitled to make a status determination over and above its determination of whether the predicate offenses have been established. Because the nature of status is different than guilt for a particular crime, the interplay between the habitual offender statute, I.C. § 35-50-2-8, and the umbrella “law and the facts” statute, I.C. § 35-37-2-2(5), operates to give a jury latitude in defining habitual offender status in a way that it does not in defining guilt or innocence.
In Seay, we wrote, “[ijmplicit in this holding is the principle that during the habitual offender phase, art. I, § 19 does apply.” Seay, 698 N.E.2d at 736. This statement was not necessary to our holding in Seay because the effect of the interaction of the habitual offender statute, I.C. § 35-50-2-8, and the umbrella “law and the facts” statute, I.C. § 35-37-2-2(5), was sufficient to sustain the holding. We need not and should not have identified the Indiana Constitution as additional support for the holding and consider those comments to be obiter dicta. The authority given by the Legislature to determine both habitual offender status and the law and the facts provides the basis for the holding in Seay, independent of the State Constitution.
During the habitual offender phase of his trial, Walden asked the trial court to give his Jury Instruction No. 1, which read: “Even where the jury finds the facts of the prerequisite prior felony convictions to be uncontroverted, the jury still has the unquestioned right to refuse to find the Defendant to be a habitual offender at law.” (App. 253.) The trial court refused this instruction, and instead instructed the jury with the trial court’s Jury Instruction No. 2: “Under the Constitution of Indiana you have the right to determine both the law and the facts. The Court’s instructions are your best source in determining the law.” (R. at 649; App. 261.) The trial court also gave Jury Instruction No. 3, as follows:
*1186 Count 4 of the Information in this case charges the Defendant with being an Habitual Offender. The applicable statute reads in part as follows:
The State may seek to have a person sentenced as an habitual offender for any felony by proving that the person has accumulated two (2) prior unrelated felony convictions.
You may find the Defendant to be an habitual offender only if the State has proven each of the [two previous offenses and the current offense] beyond a reasonable doubt.:
[[Image here]]
If the State failed to prove these elements beyond a reasonable doubt, you must find the Defendant is not an habitual offender.
(App. 262.)
When a party has challenged a trial court’s refusal of a tendered jury instruction, the court on appeal performs a three-part evaluation. First, we ask whether the tendered instruction is a correct statement of the law. Second, we examine the record to determine whether there was evidence present to support the tendered instruction. (This part of the test is not at issue in this case.) Third, we determine whether the substance of the tendered instruction was covered by another instruction or instructions. Hartman v. State, 669 N.E.2d 959, 960-61 (Ind.1996). This evaluation is performed in the context of determining whether the trial court abused its discretion when it rejected the instruction. Id. at 962.
On the question of whether Walden’s tendered instruction was a correct statement of the law, the parties are in agreement. Walden points out that his instruction reflects almost verbatim the holding of our Court in Seay, 698 N.E.2d at 734. Walden is,correct that in Seay, we said that “even where the jury finds the facts of the prerequisite prior felony convictions to be uncontroverted, the jury still has the unquestioned right to refuse to find the defendant to be a habitual offender at law.” Id. (citations omitted). The State concedes in its brief that the tendered instruction was a correct statement of the law.
Under the third part of the analysis of a trial court’s refusal of a jury instruction, we ask whether another instruction covered the material covered by the rejected instruction. Simply stated, the jury was instructed on its right to determine the facts and law of the case. That the jury has more latitude in making a habitual offender determination than in determining guilt or innocence does suggest that the guilt phase “law and the facts” instruction might warrant advising the jury that it has the right to determine habitual offender status without strict reliance on the number of felony convictions the defendant has accrued. Such an advisement would not have been inappropriate. But while explanation from us on this point was provided in Seay, and a broader jury instruction would not have been wrong, the trial court is certainly not obligated to issue an invitation to the jury to disregard prior convictions in addition to informing the jury of its ability to determine the law and the facts. The substance of the information contained in the trial court’s instruction and Walden’s requested instruction is the same.[3] This is especially true here, where the trial court emphasized in Jury Instruction No. 3 that the jury “may ”— not must — find the defendant a habitual offender if the State has proved two prior unrelated felony convictions. Such use of “may” in the instruction reinforced the *1187 jury’s discretion; indeed, the only requirement placed upon the jury in Instruction No. 3 was “[I]f the State failed to prove these elements beyond a reasonable doubt, [the jury] must find the Defendant is not an habitual offender.” (App. 262 (emphases added).) Because we evaluate the trial court’s rejection of the instruction for an abuse of discretion, we cannot find that the trial court incorrectly instructed the jury on the law or improperly excluded mention of relevant law.
Conclusion
The judgment of the trial court is affirmed with respect to Walden’s proposed jury instruction No. 1. We summarily affirm the Court of Appeals as to other issues raised on appeal but not addressed in this opinion. App. R. 58(A).
SHEPARD, C.J., and BOEHM, J., concur.
RUCKER, J., dissents with separate opinion in which DICKSON, J., concurs.
DICKSON, J., dissents with separate opinion in which RUCKER, J., concurs.

. Jury nullification is "[a] jury's knowing and deliberate rejection of the evidence or refusal to apply the law either because the jury wants to send a message about some social issue that is larger than the case itself or because the result dictated by law is contrary to the jury's sense of justice, morality, or fairness.” Black’s Law Dictionary 875 (8th ed.2004).

. While there has been a school of thought that the U.S. Constitution requires a jury to determine habitual offender status, see, e.g., *1185 Shepard v. United States, 544 U.S. 13, 27, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) (Thomas, J., concurring), and Almendarez-Torres v. United States, 523 U.S. 224, 248, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) (Scalia, J., dissenting), that position has now been squarely rejected by the U.S. Supreme Court in James v. United States, 550 U.S. 192, 127 S.Ct. 1586, 1600 n.8, 167 L.Ed.2d 532 (2007). We predicted this result in Smith v. State, 825 N.E.2d 783, 789 (Ind.2005).

. While it was unnecessary, for the reasons discussed above, for the trial court to refer to the Indiana Constitution in its instruction, we perceive no possible prejudice to Walden.