**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**PETER D. TODD**
Elkhart, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**NICOLE M. SCHUSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEFFREY D. PRUITT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A05-1110-CR-576 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable Evan S. Roberts, Judge
Cause No. 20D01-0809-FC-67

**June 19, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Jeffrey Pruitt appeals his conviction for Class C felony criminal recklessness. We affirm.

## Issues

Pruitt raises two issues, which we restate as:

    I.        whether the trial court properly rejected his tendered self-defense instruction; and

    II.      whether the manner in which the jury was instructed on self-defense resulted in fundamental error.

## Facts

In December 2007, Pruitt had been romantically involved with Sabrina Hardesty and was living with her and her two daughters in her apartment in Elkhart. The romantic relationship ended and, despite Sabrina's request, Pruitt did not move out of the apartment. On December 5, 2007, Sabrina asked two of her brothers, Adrian and Archibald, to help her get Pruitt to leave the apartment.

Adrian, Archibald, and a friend, Jeff DeVore, arrived at the apartment while Sabrina was getting her young daughters ready for a Christmas program. Pruitt was sitting on the couch when the men arrived. Archibald told Pruitt it was time to move out, and Pruitt explained he had nowhere to go and questioned "who the heck was [Archibald] to tell him what to do." Tr. p. 570. A physical fight ensued between Archibald and Pruitt and, to some extent, Adrian. During the fight, Sabrina's boyfriend, Billy Doolittle, and another one of her daughters arrived at the apartment. Eventually the fight ended, and Pruitt agreed to go upstairs to get his things.

2

Before going upstairs, Pruitt stated, "Somebody gonna die today." Id. at 410. After ten to fifteen minutes, Pruitt returned downstairs. At some point, apparently in an attempt to trick Pruitt into believing he had a gun, Adrian instructed DeVore to go get a gun from his car. DeVore left knowing there was no gun. When DeVore returned, he remained on the landing outside the apartment and did not reenter. DeVore, however, showed Pruitt he did not have a gun by pulling up his shirt, raising his hand in the air, and saying, "I ain't got nothing." Id. at 414.

As Sabrina and Doolittle were leaving the apartment with the children for the program, Pruitt made another threat and aimed a gun toward Sabrina and Doolittle. Archibald attempted to disarm Pruitt and was shot in the head. Although Archibald suffered a massive brain injury, he survived the shooting.

On September 5, 2008, the State charged Pruitt with Class C felony criminal recklessness. At the conclusion of the September 2011 trial, a jury found Pruitt guilty as charged. Pruitt now appeals.

## Analysis

### I. Refusal to Give Tendered Instruction

Pruitt argues that the trial court improperly refused to give his tendered self-defense instruction. When a party has challenged a trial court's refusal of a tendered jury instruction, we perform a three-part evaluation to determine whether the trial court abused its discretion. Walden v. State, 895 N.E.2d 1182, 1186 (Ind. 2008). "First, we ask whether the tendered instruction is a correct statement of the law." Id. Second, we examine the record to determine whether there was evidence to support the tendered

3

instruction. Id. "Third, we determine whether the substance of the tendered instruction was covered by another instruction or instructions." Id. "An instruction that tends to confuse the jury is properly rejected." Dill v. State, 741 N.E.2d 1230, 1232 (Ind. 2001).

The jury was instructed on self-defense as follows:

> It is an issue whether the Defendant acted in self-defense. A person may use reasonable force against another person to protect himself from what the Defendant reasonably believes to be the imminent use of unlawful force. A person is justified in using deadly force, and does not have a duty to retreat, only if he reasonably believes that the deadly force is necessary to prevent serious bodily injury to himself. However, a person may not use force if he provokes a fight with another person with intent to cause bodily injury to that person or he entered into a fight with another person or started the fight, unless he withdraws from the fight and communicates to the other person his intent to withdraw and the other person nevertheless continues or threatens to continue the fight. The State of Indiana has the burden of proving beyond a reasonable doubt that the Defendant did not act in self-defense.

App. p. 38. Pruitt's tendered self-defense instruction provided:

> Where defendant has belief that he is in danger of loss of life or great bodily harm, the fact that the danger was not real, but only apparent would not render defendant guilty, for question of apparent necessity can only be determined from standpoint of defendant at the time and under all the existing circumstances.

Id. at 65.

As the basis for his tendered instruction, Pruitt cited King v. State, 249 Ind. 699, 234 N.E.2d 465 (1968). A complete reading of the rule referenced in King, however, requires that the danger appears to be real and that it is "'reasonably believed'" by the defendant to be real. King, 249 Ind. at 707, 234 N.E.2d at 469 (quoting Trogdon v. State,

4

133 Ind. 1, 7, 32 N.E. 725, 727 (1892)). Pruitt's instruction did not include any reference to a "reasonable belief" of an apparent danger. Thus, Pruitt's tendered instruction is not a correct statement of the law because it does not reference the objective standard of reasonableness.

Even if the tendered instruction was a correct statement of the law, the evidence did not support it. Pruitt asserts that, even if DeVore did not have a gun, the evidence demonstrated that DeVore left the apartment to trick Pruitt into believing he had a gun. Regardless, the evidence showed that DeVore never actually reentered the apartment and remained on the landing outside the apartment and that DeVore showed Pruitt he did not have a gun by waiving his hand, lifting up his shirt, and expressly saying he was unarmed. Based on this evidence and the fact that Pruitt did not testify or otherwise present any evidence regarding his subjective beliefs, we are not convinced that Pruitt's tendered instruction was supported by the evidence.

Finally, we disagree with Pruitt's assertion that the jury was denied the opportunity to judge the evidence from his standpoint because the jury was instructed to consider what Pruitt reasonably believed in determining whether he was acting in self-defense. See Littler v. State, 871 N.E.2d 276, 279 (Ind. 2007) (holding "that the phrase 'reasonably believes,' as used in the Indiana self-defense statute, requires both subjective belief that force was necessary to prevent serious bodily injury, and that such actual belief was one that a reasonable person would have under the circumstances."). Pruitt has not established that the trial court abused its discretion by refusing his tendered self-defense instruction.

## II. Fundamental Error

Pruitt also argues that the trial court's self-defense instruction "excluded any mention of Pruitt's right to protect his apartment from [Archibald's] interference with Pruitt's lawful possession of his property or his right to protect himself against a forcible felony." Appellant's Br. p. 5. Pruitt, however, did not object to the trial court's self-defense instruction or tender his own instruction addressing these issues. A defendant who fails to object to an instruction or fails to tender an instruction waives any challenge to that instruction on appeal. Baker v. State, 948 N.E.2d 1169, 1178 (Ind. 2011). To avoid waiver, Pruitt argues that the self-defense instruction resulted in fundamental error. See id. ("The fundamental error doctrine provides a vehicle for the review of error not properly preserved for appeal.").

"In order to be fundamental, the error must represent a blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process." Id. The error must be so prejudicial to the defendant's rights that it makes a fair trial impossible. Id. In considering whether the claimed error denied Pruitt a fair trial, we determine whether the resulting harm or potential for harm is substantial. See id. at 1178-79. Harm is not shown by the fact that Pruitt was ultimately convicted; rather, it is determined by whether Pruitt's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he would have been entitled. See id. at 1179.

6

Relying on various portions of the self-defense statute, Indiana Code Section 35-41-3-2,[1] Pruitt asserts that a major portion of his defense was that he had a right to

---

[1]  Pruitt refers to the following language of Indiana Code Section 35-41-3-2, which has since been amended effective March 20, 2012:

> (a) A person is justified in using reasonable force against another person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force.  However, a person:
>
> > (1) is justified in using deadly force; and
> >
> > (2) does not have a duty to retreat;
>
> if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible felony.  No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting the person or a third person by reasonable means necessary.
>
> (b) A person:
>
> > (1) is justified in using reasonable force, including deadly force, against another person; and
> >
> > (2) does not have a duty to retreat;
>
> if the person reasonably believes that the force is necessary to prevent or terminate the other person's unlawful entry of or attack on the person's dwelling, curtilage, or occupied motor vehicle.
>
> (c) With respect to property other than a dwelling, curtilage, or an occupied motor vehicle, a person is justified in using reasonable force against another person if the person reasonably believes that the force is necessary to immediately prevent or terminate the other person's trespass on or criminal interference with property lawfully in the person's possession, lawfully in possession of a member of the person's immediate family, or belonging to a person whose property the person has authority to protect.  However, a person:
>
> > (1) is justified in using deadly force; and
> >
> > (2) does not have a duty to retreat;
>
> only if that force is justified under subsection (a).

peacefully exist in his own home. Although this may be a legally correct assertion, it is not supported by the evidence in this case.

Pruitt did not have any legal interest in Sabrina's apartment. Pursuant to the terms of her lease and her Section 8 housing agreement, only Sabrina and her children were permitted to live in the apartment. In fact, Sabrina was convicted of felony welfare fraud for permitting Pruitt to stay there. Further, Sabrina testified that Pruitt only stayed there three or four times a week, did not contribute financially, and did not receive mail there. Moreover, at least a week before the incident, Sabrina asked Pruitt to leave, and Pruitt agreed to leave. Pruitt, however, did not leave, and Sabrina asked her brothers for help. The evidence simply does not support Pruitt's assertion that he was protecting his own home.

Nor does the record suggest that Pruitt was simply trying to peacefully exist or otherwise protect himself from a forcible felony. When Adrian and Archibald told Pruitt to leave, a fight ensued. Archibald testified that Pruitt threw the first punch. After the men stopped fighting, Pruitt went upstairs to get his things. He remained upstairs for ten to fifteen minutes and then returned downstairs with a gun. When Pruitt came back downstairs, the apartment was occupied by Sabrina, three of her daughters, Doolittle, Adrian, and Archibald. Facing no apparent threat, Pruitt took aim at Sabrina or Doolittle, not Adrian or Archibald with whom he had been fighting earlier, and Archibald was shot when he attempted to disarm Pruitt.

Under these circumstances, we cannot conclude that the self-defense instruction given by the trial court, without reference to the right to protect property or to protect

8

against a forcible felony, resulted in the denial of procedural opportunities for the ascertainment of truth to which Pruitt would have been entitled. Pruitt has not established that the manner in which the jury was instructed on self-defense resulted in fundamental error.

## Conclusion

The trial court did not abuse its discretion in refusing Pruitt's tendered self-defense instruction, and the manner in which the jury was instructed on self-defense did not result in fundamental error. We affirm.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.