**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**SAMUEL S. SHAPIRO**
Bloomington, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CASEY R. GREENE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 07A01-1109-CR-391 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE BROWN CIRCUIT COURT
The Honorable Judith A. Stewart, Judge
Cause No. 07C01-0810-FC-437

**June 25, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Casey Greene appeals his convictions for Class C felony dealing in marijuana and Class A misdemeanor resisting law enforcement. We affirm.

**Issues**

Greene raises several issues, which we restate as:

    I.       whether the trial court abused its discretion by admitting marijuana found during a search of Greene's property;

    II.     whether the trial court properly instructed the jury regarding the definition of marijuana;

    III.    whether the evidence is sufficient to sustain Greene's conviction for Class C felony possession of marijuana; and

    IV.    whether Greene's due process rights were violated.

**Facts**

On September 26, 2008, Captain Jason Lee, a Conservation Officer for the Indiana Department of Natural Resources, received information from a confidential informant that there was a marijuana growing operation near Gatesville Road and Bear Wallow Road in Brown County. The property at issue was owned by Greene, and it had a locked gate on the driveway. Captain Lee and Officer Brent Bohbrink drove to the area and parked at an adjacent property. They walked around a pond and toward an opening in the forest, where they smelled the strong odor of marijuana. They went closer and saw three people, several vehicles, and a large white box trailer. Captain Lee used a spotting scope

and saw that the people were using scissors to process marijuana near the trailer. Captain Lee and Officer Bohbrink left the area and obtained a search warrant.

They returned to the property later with additional officers. Some of the officers approached the area from the adjacent property, and other officers entered the property at its driveway. Greene saw Captain Lee and started running. Jeffrey Smith, Paul Fowler, and Kevin Rotino were apprehended. Indiana State Trooper Chris Griggs saw Greene, recognized him, and ordered him to stop, but Greene kept running and escaped. The officers searched the area and found a large amount of marijuana, drying racks, a generator, batteries, camouflage netting, fans, and scissors. Captain Lee did not find any full marijuana plants because when they "got there all of the marijuana had basically been processed." Tr. p. 115. The officers later obtained two additional search warrants to search vehicles and cell phones.

The State charged Greene with Class C felony dealing in marijuana, Class D felony possession of marijuana, Class A misdemeanor possession of paraphernalia, Class A misdemeanor resisting law enforcement, and Class B misdemeanor visiting a common nuisance. The dealing in marijuana charge was a Class C felony due to the recovery of ten pounds or more of marijuana. Green filed a motion to suppress evidence discovered as a result of the search warrant, and the trial court denied the motion.

At the trial, the State dismissed the charges of Class A misdemeanor possession of paraphernalia and Class B misdemeanor visiting a common nuisance. Hailey Newton, a forensic scientist with the Indiana State Police laboratory, testified regarding the marijuana, which she received in several large paper bags. Newton testified that she

3

emptied the bags of marijuana onto a table and removed "mature stalks" and stems larger than a pencil. Id. at 216. She then weighed the remaining marijuana. According to Newton, the marijuana in Exhibit 43 weighed 6.20 pounds, and the marijuana in Exhibit 44 weighed 4.52 pounds, for a total of 10.72 pounds. She then took a sample of the marijuana for testing and placed the stalks and stems back into the bags.

Smith testified that, in September 2008, Greene offered him an opportunity to make some money. Smith went to Greene's Brown County property, and Greene unlocked the trailer and asked Smith to help "clean" the marijuana. Id. at 238. Smith worked at the property for three days processing the marijuana. Smith said that Greene ran from the property when the officers arrived. Smith pled guilty to felony possession of marijuana and agreed to testify against Greene and the others.

Dr. Eugene Schwilke, a forensic toxicologist with AIT Laboratories, testified on Greene's behalf. Schwilke testified that he removed stalks and stems and reweighed the marijuana in State's Exhibit 43 and 44. Schwilke testified that the marijuana weighed 9.645 pounds. On cross examination, Schwilke admitted that this was the first time he had weighed marijuana. He was unaware that Newton had removed part of the marijuana from the exhibits for testing. He also weighed the marijuana while it was in the bags. He only weighed one of the paper bags and then estimated the weight of the remaining paper bags. He did not take into account varying amounts of tape and staples on the paper bags.

The jury found Greene guilty of Class C felony dealing in marijuana, Class D felony possession of marijuana, and Class A misdemeanor resisting law enforcement.

4

The trial court entered judgment of conviction for Class C felony dealing in marijuana and Class A misdemeanor resisting law enforcement and sentenced Greene to an aggregate sentence of five years with two years suspended to probation. Greene now appeals.

**Analysis**

*I. Admission of Evidence*

Greene argues that the trial court abused its discretion by admitting the marijuana found during a search of his property. We review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. Roche v. State, 690 N.E.2d 1115, 1134 (Ind. 1997). We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. Joyner v. State, 678 N.E.2d 386, 390 (Ind. 1997).

According to Greene, Captain Lee's initial warrantless observations of his property violated the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. Greene also argues that the search warrant was not supported by probable cause because the credibility of the informant was not established and because the affidavit did not contain a description of Captain Lee's training to recognize the smell of marijuana.[1]

---

[1] The State argues that Greene waived this issue by failing to object. Greene did object to Exhibits 43 and 44, which were the large quantities of marijuana found on his property, and made a continuing objection to that evidence. However, he failed to object to the testimony by Captain Lee regarding his observations and the search, and he failed to object to the remainder of the evidence found as a result of the search. "The failure to make a contemporaneous objection to the admission of evidence at trial results in waiver of the error on appeal." Jackson v. State, 735 N.E.2d 1146, 1152 (Ind. 2000). "A contemporaneous objection affords the trial court the opportunity to make a final ruling on the matter in the context in which the evidence is introduced." Id. Greene's failure to properly object results in waiver of appellate

5

## A. *Warrantless Observations*

### 1. *United States Constitution*

The Fourth Amendment to the Constitution of the United States protects citizens against unreasonable searches and seizures. Trimble v. State, 842 N.E.2d 798, 801 adhered to on reh'g, 848 N.E.2d 278 (Ind. 2006). In Oliver v. United States, 466 U.S. 170, 183, 104 S. Ct. 1735, 1743-44 (1984), the Supreme Court held that "officers' information-gathering intrusion on an 'open field' did not constitute a Fourth Amendment search even though it was a trespass at common law." United States v. Jones, 132 S. Ct. 945, 953 (2012). "Quite simply, an open field, unlike the curtilage of a home, . . . is not one of those protected areas enumerated in the Fourth Amendment." Id. "The Government's physical intrusion on such an area . . . is of no Fourth Amendment significance." Id.

Greene argues that the property was not an "open field" because it had a driveway with a locked gate, it was his future homesite, and his tools, vehicles, a pole barn, a barn, a fishing pond, and his construction materials were located on the property. However, the facts here are very similar to those in Oliver, 466 U.S. at 173, 104 S. Ct. at 1738. There, officers drove past the defendant's house to a locked gate with a "no trespassing" sign and a footpath to one side. They walked around the gate and along the road, passing a barn and a parked camper. They found marijuana in a secluded field one mile from the defendant's house. The State argues, and we agree, that this case is indistinguishable

---

review. Waiver notwithstanding, we address the merits of Greene's claims. Moreover, even if Greene's objection to the marijuana was sufficient, his arguments regarding the search fail.

from <u>Oliver</u>.  The officers' warrantless observation of Greene's property does not implicate the Fourth Amendment.

## *2. Indiana Constitution*

Next, Greene argues that the warrantless observations violated Article 1, Section 11 of the Indiana Constitution, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

"Although this language tracks the Fourth Amendment verbatim, we proceed somewhat differently when analyzing the language under the Indiana Constitution than when considering the same language under the Federal Constitution." <u>Trimble</u>, 842 N.E.2d at 803.  "Instead of focusing on the defendant's reasonable expectation of privacy, we focus on the actions of the police officer, concluding that the search is legitimate where it is reasonable given the totality of the circumstances." <u>Id.</u>  "We will consider the following factors in assessing reasonableness: '1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.'" <u>Id.</u> (quoting <u>Litchfield v. State</u>, 824 N.E.2d 356, 361 (Ind. 2005)).

Greene does not analyze the three factors identified in <u>Litchfield</u>.  Rather, he argues that "we Hoosiers do not approve of persons skulking or trespassing upon our future homesites—particularly where there is valuable property such as vehicles, heavy

7

equipment bulldozers and trenchers, tools, and building materials—when we have clearly indicated by a gated driveway that we do not condone or invite entry onto our property." Appellant's Br. p. 12.

Our analysis of the relevant factors reveals no violation of Article 1, Section 11 of the Indiana Constitution. We begin by considering "the degree of concern, suspicion, or knowledge that a violation has occurred." Litchfield, 824 N.E.2d at 361. If a search is based on a concerned citizen's report of an alleged crime, the degree of concern, suspicion, or knowledge that a violation has occurred is essentially the same as the reasonable suspicion required for an investigatory stop. Trimble, 842 N.E.2d at 803. "The reasonable suspicion standard is less demanding than probable cause and requires a showing considerably less than a preponderance of the evidence, but it still requires at least a minimal level of objective justification and more than an inchoate and unparticularized suspicion or hunch of criminal activity." Teague v. State, 891 N.E.2d 1121, 1128 (Ind. Ct. App. 2008).

Here, a confidential, but not anonymous, informant told Captain Lee that there was a marijuana growing operation at Greene's property. The informant had given Captain Lee credible information in the past. That same day, Captain Lee and another officer approached the property at issue from a neighboring property owner's woods and observed the marijuana operation. We conclude that Captain Lee's degree of concern that a violation was occurring was reasonable. See Trimble, 842 N.E.2d at 804 (holding that an officer's degree of concern that a violation had occurred was reasonable based on

8

a citizen's report of criminal activity, the officer's corroboration of their descriptions, and the fact that there was no indication the citizens were unreliable).

The degree of intrusion here was minimal. Captain Lee approached Greene's land from the adjacent property, and he observed the activities on Greene's property through a spotting scope. It is not even clear from the record whether the officers entered Greene's property at all. The marijuana activities were being performed in the open on Greene's property, without any attempt to conceal their activities. Further, "the degree of intrusion is viewed from the point of view of the occupants or owners of the premises searched." Duran v. State, 930 N.E.2d 10, 19 (Ind. 2010). Greene testified that he routinely let other people fish in the pond on his property. Viewing his property through a spotting scope is a minimal degree of intrusion.

The final factor is the "extent of law enforcement needs." Litchfield, 824 N.E.2d at 361. "[T]he severity of the law enforcement need embraces proper concern for the health and safety of others." Trimble, 842 N.E.2d at 804. "Where a police officer has received a timely tip concerning a possibly dangerous situation, the privacy interest is diminished." Id. The officer here received information regarding a marijuana growing operation. The marijuana could be quickly removed from the property and distributed, resulting in a need to investigate the complaint in a prompt manner. Although this was not a particularly dangerous situation, we conclude there was a moderate law enforcement need.

Given our review of the factors, we conclude that Captain Lee's actions were reasonable under the Indiana Constitution. As in Trimble, the information provided to

9

Captain Lee "was sufficient to trigger an investigation that was done from essentially public space, and this investigation justified further action." Trimble, 842 N.E.2d at 804.

### B. *Validity of Search Warrant*

Next, Greene argues that the marijuana was inadmissible because the search warrant was not supported by probable cause. "In deciding whether to issue a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Jackson v. State, 908 N.E.2d 1140, 1142 (Ind. 2009) (quoting Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)). "The duty of the reviewing court is to determine whether the magistrate had a 'substantial basis' for concluding that probable cause existed." Id. (quoting Gates, 462 U.S. at 238, 103 S. Ct. at 2332). A substantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause. Id. Although we review de novo the trial court's substantial basis determination, we nonetheless afford significant deference to the magistrate's determination as we focus on whether reasonable inferences drawn from the totality of the evidence support that determination. Id. "Probable cause to search premises is established when a sufficient basis of fact exists to permit a reasonably prudent person to believe that a search of those premises will uncover evidence of a crime." Esquerdo v. State, 640 N.E.2d 1023, 1029 (Ind. 1994).

Captain Lee's search warrant affidavit provided:

I am a law enforcement officer with the Indiana Department of Natural Resources.

Earlier today, I was contacted by an individual who wishes to remain anonymous. I knew the individual, and that individual has given me accurate information in the past. Further, that person could potentially face false informing charges if he gave me false information. That person told me that he saw marijuana growing on property described as the first lane on the south side of Gatesville Road west of the intersection of Gatesville Rd. and Bear Wallow Rd., Brown County, Indiana. There does not appear to be a permanent residence on the property.

This afternoon, I entered onto an adjoining property and approached the suspect property in the woods. From a location in the woods, I could see the driveway described above. The driveway is blocked by a gate about 150 yards from Gatesville Rd. On the inside of the gate, there is a green Dodge truck with a camper shell. Further up the drive, I saw a dark Dodge truck and a pull-behind trailer. Inside the trailer, I could see plant material hanging as if drying from the roof of the trailer. I was downwind of the trailer and could smell the strong odor of fresh marijuana. I observed three people near the trailer. One would remove marijuana from the back of the trailer, bring it to the table, where the other two were cutting up the marijuana with scissors.

Based on the above, I have probable cause to believe that evidence of the crimes of dealing marijuana and possession of marijuana is located at the location. Specifically, I request authorization to enter onto the above described property and to search inside the trailer to search for and retrieve marijuana, a schedule one controlled substance.

Appellant's App. p. 97.

In arguing that the reliability of the informant was not established, Greene relies upon Indiana Code Section 35-33-5-2(b), which provides:

When based on hearsay, the affidavit must either:

11

> (1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or
>
> (2) contain information that establishes that the totality of the circumstances corroborates the hearsay.

Greene argues that probable cause did not exist because the credibility of the confidential informant was not established and because Captain Lee's training and experience to recognize the smell of marijuana was not established.

Even if we were to assume that probable cause did not exist to support issuing a warrant to search Greene's property, we nonetheless conclude the trial court correctly admitted the evidence obtained during the search. "The lack of probable cause does not automatically require the suppression of evidence obtained during a search conducted pursuant to a warrant." Jackson, 908 N.E.2d at 1143. In United States v. Leon, 468 U.S. 897, 104 S. Ct. 3405 (1984), the United States Supreme Court held that the exclusionary rule does not require the suppression of evidence obtained in reliance on a defective search warrant if the police relied on the warrant in objective good faith. Id. Leon cautioned that the good faith exception is not available in some situations, including where "(1) the magistrate is 'misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth,' or (2) the warrant was based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" Id. (quoting Leon, 468 U.S. at 923, 104 S. Ct. at 3421). The good faith exception to the warrant requirement has been codified by Indiana Code Section 35-37-4-5. Id.

12

There is no allegation that Captain Lee misled the magistrate here. Further, we cannot say that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. Captain Lee obtained information from a confidential informant who had previously given the officer accurate information. Captain Lee confirmed the information by observing marijuana being processed on the property at issue. Although additional information in the search warrant affidavit regarding the confidential informant's credibility and Captain Lee's training might have been helpful, we conclude that the officers relied on the search warrant in objective good faith, and the trial court did not abuse its discretion by admitting the evidence found pursuant to the search warrant. See Jackson, 908 N.E.2d at 1144-45 (holding that the good faith exception applied where the officer's testimony, while abbreviated, demonstrated the nature of his relationship with the informant and the officer "bolstered the informant's tip by testifying to complaints from the public about traffic consistent with drug dealing").

## II. Jury Instructions

Next, Greene argues that the trial court erred when it instructed the jury regarding the definition of marijuana. According to Greene, the trial court erred by rejecting his proposed instructions regarding the definition of a "mature stalk" or "stem" of marijuana. When a party has challenged a trial court's refusal of a tendered jury instruction, the court on appeal performs a three-part evaluation. Walden v. State, 895 N.E.2d 1182, 1186 (Ind. 2008). First, we ask whether the tendered instruction is a correct statement of the law. Id. Second, we examine the record to determine whether there was evidence

13

present to support the tendered instruction. Id. Third, we determine whether the substance of the tendered instruction was covered by another instruction or instructions. Id. This evaluation is performed in the context of determining whether the trial court abused its discretion when it rejected the instruction. Id.

Greene tendered three instructions regarding the definition of marijuana, mature stalks, and stems. The proposed instructions provided:

> In the context of our criminal law, I.C. 35-48-1-19 defines marijuana as "any part of the plant . . .[but] does not include the mature stalks of the plant."
> The word "stem" is most commonly defined as "the main central part (usually above the ground) of a tree or shrub or plant." The word "stalk" is defined almost identically as "the main stem of a plant." Webster's International Dictionary . . . defines "stem" as "the main axis, trunk, or body of a tree or other plant" and "stalk" as "the stem or main axis of a plant."
>
> * * * * *
>
> "Stalk" is defined as any stem or stemlike party, as a slender rod, shaft, or support.
>
> * * * * *
>
> "Stem" is defined as the main upward growing axis of a plant, having nodes and bearing leaves. It is also defined as any stalk or part supporting leaves, flowers, or fruits.

Appellant's App. pp. 43-45 (internal citations omitted). Greene was attempting to argue that the weight of the marijuana would have been less than ten pounds if all of the stalks and stems were removed. The trial court rejected those instructions.

The trial court instructed the jury with the statutory definition of marijuana as follows:

14

> The term "marijuana" means any part of the plant genus Cannabis whether growing or not; the seeds thereof; the resin extracted from any part of the plant, including hashish and hash oil; any compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds or resin. It does not include the mature stalks of the plant; fiber produced from the stalks; oil or cake made from the seeds of the plant; any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks (except the resin extracted therefrom); or the sterilized seed of the plant which is incapable of germination.

Id. at 66; see Ind. Code § 35-48-1-19. The trial court also instructed the jury that, to convict Greene, the State must have proved that Greene knowingly or intentionally manufactured "pure or adulterated marijuana" and the amount involved was ten pounds or more of marijuana.[2] Appellant's App. p. 63. Finally, the trial court also instructed the jury that:

> The aggregate weight of marijuana includes both pure and adulterated marijuana. Therefore, the aggregate weight may include not only "pure" marijuana, but also "other vegetable material" not fitting within the definition of marijuana. The fact that marijuana recovered contained portions of the marijuana plant not included within the statutory definition of marijuana does not prevent the entire amount recovered from

---

[2] Greene argues that the "pure or adulterated" language was not included in his charging information. See Appellant's App. p. 86. It is not clear that Greene raised this issue to the trial court. Moreover, "[a] charging information must allege the elements of the crime such that the accused is sufficiently apprised of the nature of the charges against him so that he may anticipate the proof and prepare a defense in advance of trial." Winn v. State, 748 N.E.2d 352, 356 (Ind. 2001); I.C. § 35-34-1-2. "Absence of detail in an information is fatal only if the phraseology misleads the defendant or fails to give him notice of the charges against him." McGee v. State, 495 N.E.2d 537, 538 (Ind. 1986). Greene does not argue that he was misled by the information or that it failed to give him notice of the charges against him. See Smith v. State, 445 N.E.2d 998, 999 (Ind. 1983) ("Though it is undoubtedly preferable for an information for Attempted Robbery, class B felony, to contain the phrase "while armed with a deadly weapon", . . . absent proof that the accused was mislead by the phraseology employed, we do not think that such a phrase is imperative to satisfy the due process requirement of notice.").

15

being considered in the amount of marijuana manufactured or processed.

Id. at 67.

In Lycan v. State, 671 N.E.2d 447, 457 (Ind. Ct. App. 1996), the defendant also argued that "the aggregate weight of the marijuana recovered must exclude any material not contained within the statutory definition of marijuana." We held "the law of this state is clear that the aggregate weight of marijuana necessary to sustain an offense enhancement includes not only 'pure' marijuana, but also 'other vegetable material' not fitting within the definition of marijuana." Lycan, 671 N.E.2d at 457 (quoting Allison v. State, 527 N.E.2d 234, 238 (Ind. Ct. App. 1988), trans. denied). "Thus, the fact that the marijuana recovered contained portions of the marijuana plant not included within the statutory definition of marijuana [did] not prevent the entire amount recovered from being considered with respect to [the defendant's] offense enhancement." Id.

We conclude that the trial court did not abuse its discretion by rejecting Greene's proposed instructions because the substance of the tendered instructions was covered by other instructions and because the evidence did not support the tendered instructions. The instructions given by the trial court adequately instructed the jury regarding the definition of marijuana. Moreover, whether the forensic scientist removed all of the stems before weighing the marijuana was irrelevant given our holding in Lycan. See also Adams v. State, No. 49A05-1107-CR-372, slip op. at 9 (Ind. Ct. App. May 24, 2012) (holding that "the issue of identifying mature stalks is irrelevant for determining whether Adams dealt at least 30 grams of marijuana because it is clear that a sentence

16

enhancement for dealing in marijuana may be supported by an adulterated form of marijuana, which includes 'other vegetable material' not included within the definition of marijuana"). The trial court did not abuse its discretion by rejecting Greene's proposed instructions.

### III. Sufficiency of the Evidence

Greene argues that the evidence is insufficient to sustain his Class C felony dealing in marijuana conviction. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. Bailey v. State, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." Id. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. Id.

The offense of dealing in marijuana is governed by Indiana Code Section 35-48-4-10, which provides that a person who knowingly or intentionally manufactures marijuana, "pure or adulterated," commits dealing in marijuana. The offense is a Class C felony if the amount involved is ten pounds or more of marijuana. I.C. § 35-48-4-10(b)(2)(A).

Greene argues that the evidence is insufficient to show that he manufactured ten pounds or more of marijuana. Specifically, Greene challenges the weight determination of Newton, a forensic scientist with the Indiana State Police laboratory, as compared to the weight determination of his expert witness, Schwilke, a forensic toxicologist with

17

AIT Laboratories. Newton testified that she received several paper bags filled with marijuana, emptied the bags of marijuana onto a table, and removed "mature stalks" and stems larger than a pencil. Tr. p. 216. She then weighed the remaining marijuana. According to Newton, the marijuana in Exhibit 43 weighed 6.20 pounds, and the marijuana in Exhibit 44 weighed 4.52 pounds, for a total of 10.72 pounds. She then took a sample of the marijuana for testing and placed the stalks and stems back into the bags.

Schwilke testified that he removed what he considered to be stalks and stems and weighed the marijuana in Exhibit 43 and 44 and that the marijuana weighed 9.645 pounds. On cross examination, Schwilke admitted that this was the first time he had weighed marijuana. He testified that he was unaware Newton had removed part of the marijuana from the exhibits for testing. He also weighed only one of the paper bags that contained the marijuana and then estimated the weight of the remaining paper bags. He did not take into account varying weights of the tape and staples on the paper bags.

Greene's argument is merely a request that we reweigh the evidence and judge the credibility of the witnesses, which we cannot do. Moreover, as in Lycan, even if the marijuana that was weighed contained portions of the marijuana plant not included within the statutory definition of marijuana, Newton was not prevented from considering the stems smaller than a pencil in determining the weight. The State presented evidence that the weight of the marijuana was greater than ten pounds, and the evidence is sufficient to sustain Greene's conviction for Class C felony dealing in marijuana.

## *IV. Constitutional Claims*

Greene also argues that his constitutional due process rights were violated. Greene contends that he was denied due process under the federal and Indiana constitutions because of the "lack of definition, lack of notice, and lack of objective ascertainable uniform standards to weigh the marijuana." Appellant's Br. p. 23. Greene did not raise the argument to the trial court and raises the argument for the first time on appeal.[3] We do not address constitutional arguments that are raised for the first time on appeal. Zagorac v. State, 943 N.E.2d 384, 394 (Ind. Ct. App. 2011).

Waiver notwithstanding, we recently rejected the same due process argument in Adams v. State, No. 49A05-1107-CR-372, slip op. at 9 (Ind. Ct. App. May 24, 2012) (holding that the defendant was not denied due process because "identifying mature stalks is irrelevant for determining whether Adams dealt at least 30 grams of marijuana because it is clear that a sentence enhancement for dealing in marijuana may be supported by an adulterated form of marijuana, which includes 'other vegetable material' not included within the definition of marijuana"). We conclude that Greene's constitutional claim fails.

---

[3] Greene also appears to argue that his equal protection rights under the United States Constitution and the privileges and immunities clause in the Indiana Constitution were violated. Greene argues that he was subject to disparate treatment due to different standards used to assess the weight of the marijuana. Greene again raises this issue for the first time on appeal. Further, Greene cites little authority for his argument and fails to provide adequate analysis of these complex issues. Greene has waived this issue. See Ind. Appellate Rule 46 (requiring cogent argument and citation to authority); Lyles v. State, 834 N.E.2d 1035, 1050 (Ind. Ct. App. 2005) ("A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), trans. denied.

**Conclusion**

The trial court did not abuse its discretion by admitting the marijuana into evidence or by rejecting Greene's proposed jury instructions. Further, the evidence is sufficient to sustain his conviction for Class C felony dealing in marijuana, and his constitutional claim fails. We affirm.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.