## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of establishing
the defense of res judicata, collateral
estoppel, or the law of the case.



FILED

Dec 18 2019, 9:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Valerie K. Boots
Matthew D. Anglemeyer
Marion County Public Defender –
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Josiah J. Swinney
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Saul Morales,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 18, 2019

Court of Appeals Case No.
19A-CR-633

Appeal from the Marion Superior
Court

The Honorable Grant W.
Hawkins, Judge

Trial Court Cause No.
49G05-1702-F1-4285

**Mathias, Judge.**

[1]     Saul Morales ("Morales") was convicted in Marion Superior Court of Level 1

felony attempted murder. Morales appeals his conviction and argues that the

trial court abused its discretion when it tendered to the jury a self-defense instruction that was not supported by the evidence.

[2]     We affirm.

## Facts and Procedural History

[3]     Morales and Juan Velez ("Juan") were friends for many years, and they worked together. Morales lived with the Velez family in their home in Indianapolis. When Juan and his family temporarily moved to Mississippi, Morales moved with them. In December 2016, the Velez family and Morales returned to Indianapolis. Juan informed Morales that they would no longer rent a room in their apartment to him. But Morales had trouble finding a place to live, and Juan told Morales he could live with them for approximately one more month while he found a new home.

[4]     Four or five days before January 28, 2017, Morales left the apartment and took most of his belongings with him. He left two shirts, shoes, bed sheets, and a small suitcase in the bedroom he had been using. After the Velez family did not see Morales for several days, Juan and his girlfriend, Sindy, believed that Morales had found another place to live. Sindy cleaned the bedroom and began to prepare it for Juan's two sons' visits. Sindy packed Morales's remaining belongings in his suitcase.

[5]     On January 29, 2017, Sindy and her daughter were alone in the apartment at approximately 12:00 p.m. Juan had taken his sons shopping for toys. Juan locked the front door when he and the boys left. Sindy was vacuuming when

she heard noises coming from the spare bedroom. Sindy was frightened and took her daughter to the master bedroom.

[6] Minutes later, Morales knocked on Sindy's bedroom door. Morales sounded upset and asked who had been in his bedroom. Through the locked door, Sindy told Morales not to speak with her and that he could speak to Juan when he returned home.

[7] Sindy called Juan, and he returned home ten to fifteen minutes later. When Juan and his sons arrived at the apartment, Juan told Sindy to come out into the living room. Juan asked Sindy what had happened with Morales. As they talked, the spare bedroom door opened. Morales came out of the bedroom. Sindy could see Morales, but Juan had his back to him. Morales touched Juan on the shoulder and angrily stated, "I don't wanna kill you from the back." Tr. p. 59. As Juan turned toward Morales, Morales called Juan a "dog," pulled a knife out of his pocket and stabbed Juan in the middle of his lower chest. Tr. pp. 60–61.

[8] The two men then engaged in a struggle over the knife, and Morales tried to stab Juan again. Eventually, Juan was able to gain control over the knife. Morales ran out of the apartment building, and Juan attempted to follow but returned to the apartment where he collapsed to the floor.

[9] Morales was apprehended shortly thereafter. He gave a statement to the police and admitted that he had stabbed Juan. Ex. Vol., State's Ex. 53. He claimed he

acted in self-defense because Juan spoke harshly to him and treated him badly. *Id.* He stated that Juan offended him but did not touch him. *Id.*

[10] As a result of the stab wound, Juan was hospitalized for ten days to two weeks. He suffered a collapsed lung and underwent multiple surgeries.

[11] On February 1, 2017, Morales was charged with Level 1 felony attempted murder. A two-day jury trial commenced on January 14, 2019. Morales argued that he acted in self-defense when he stabbed Juan. A self-defense instruction was tendered to the jury. Morales objected to the instruction and argued that it was misleading. Tr. pp. 194–96. He requested that the trial court give the pattern jury instruction on self-defense. The trial court denied his request and gave the challenged instruction.

[12] Morales was convicted as charged. The trial court ordered him to serve twenty-five years executed in the Department of Correction. Morales now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

[13] Morales argues that the trial court abused its discretion when it tendered a self-defense instruction to the jury that was not supported by the evidence and did not follow Indiana's pattern self-defense instruction. The manner of instructing a jury is left to the sound discretion of the trial court. *Albores v. State*, 987 N.E.2d 98, 99 (Ind. Ct. App. 2013), *trans. denied*. We review the trial court's decision only for an abuse of that discretion. *Id.*

[14] "The purpose of jury instructions is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Phillips v. State*, 22 N.E.3d 749, 761 (Ind. Ct. App. 2014), *trans. denied*. When reviewing jury instruction decisions for an abuse of discretion, we consider: (1) whether the instruction correctly states the law; (2) whether there was evidence in the record to support the instruction; and (3) whether the substance of the instruction is covered by other instructions given. *Id.* To constitute an abuse of discretion, "the instructions given must be erroneous, and the instructions taken as a whole must misstate the law or otherwise mislead the jury." *Id.*

[15] The trial court gave the following self-defense[1] instruction to the jury:

> An issue has been raised as to whether the Defendant was acting in *self-defense*. The defense of *Self Defense* allows that a person is justified in using reasonable force against another person to protect him/herself, or a third party, from what (s)he reasonably

---

[1] Self-defense is statutorily defined in Indiana Code section 35-41-3-2, and the subsection relevant to this appeal provides:

> (c) A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force. However, a person:
>
>> (1) is justified in using deadly force; and
>>
>> (2) does not have a duty to retreat;
>
> if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible felony. No person, employer, or estate of a person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting the person or a third person by reasonable means necessary.

believes to be the imminent use of unlawful force. In such circumstances a person does not have a duty to retreat and is justified in using all reasonably necessary force including, if appropriate, deadly force, if (s)he reasonably believes that such force is necessary to prevent serious bodily injury to him/herself or a third person, or to prevent the commission of a forcible felony.

No person in this State shall be placed in legal jeopardy of any kind whatsoever for protecting him/herself, or another, by reasonably necessary means.

It is the State's burden to **disprove** a claim of self-defense by proof beyond a reasonable doubt. The State may satisfy this burden by proving any one of the following bulleted points beyond a reasonable doubt:

- That the Defendant was in a place where (s)he had no right to be; **or**

- That the Defendant acted improperly in that (s)he was the initial aggressor and did not make clear his/her desire to withdraw from the conflict; **or**

- That the Defendant used a degree of force that was excessive and unreasonable under the circumstances, **or**

- If the Defendant used deadly force, (s)he did not act reasonably or did not reasonably believe that such force was necessary to prevent death or serious bodily injury to him/herself or a third person, or to prevent the commission of a forcible felony.

If the State proves **any one** of these bulleted points beyond a reasonable doubt, then you may disregard the claim of self-defense. The State is not required to present rebuttal evidence to disprove a claim of self-defense; it may rely upon any evidence introduced during the course of the trial.

The question of the existence of an apparent danger and the amount of force necessary to resist force can only be determined from the standpoint of the defendant at the time of his/her actions and under the then existing circumstances. The defendant may use such force as may reasonably be necessary to resist such attack or apparent attack. (S)He will not be accountable for an error in judgment as to the amount of force necessary, provided (s)he acted reasonably and honestly.

One who was in no apparent danger and had no reasonable ground for apprehension of danger cannot raise this defense.

Appellant's App. pp. 78–79 (emphasis in original).

[16] Morales's challenge to the instruction on appeal is focused on the first bulleted statement (i.e. "the Defendant was in a place where (s)he had no right to be"). He does not claim that the instruction misstated the law.[2] Rather, he argues that the substance of the instruction was not supported by the evidence at trial.

---

[2] When a defendant raises a claim of self-defense using deadly force, he is required to show three facts: (1) he was in a place where he had a right to be; (2) he acted without fault; and (3) he had a reasonable fear of death or serious bodily harm. *Hood v. State*, 877 N.E.2d 492, 497 (Ind. Ct. App. 2007) (citing *Wallace v. State*, 725 N.E.2d 837, 840 (Ind. 2000)), *trans. denied*; *see also Richardson v. State*, 79 N.E.3d 958, 964 (Ind. Ct. App. 2017), *trans. denied*.

[17] Morales contends that the evidence at trial established that Juan temporarily allowed him to live in the apartment, that he was absent from the apartment for a few days but left his personal belongings in the bedroom, and that Juan merely assumed that he had found another place to live. Morales argues he entered the apartment through the sliding glass door, which had been his custom. There were no signs of forced entry to the apartment. Juan never denied Morales access to the apartment, and on the date of the offense, Juan did not tell Morales to vacate the premises.

[18] However, approximately two weeks before Morales stabbed Juan, Juan reminded Morales that he needed to find another place to live. Tr. p. 55. Morales told Juan that he was looking for a place to live. Tr. p. 73. At the end of January 2017, Juan and Sindy assumed Morales found another place to live because he was gone for several days.

[19] At trial, Morales argued that the court should delete the challenged language from the instruction because it was not "appropriate to mislead the jury by suggesting that somehow [Morales] did not have a right to be there." Tr. p. 195. The trial court disagreed and stated, "there's some degree of disagreement as to whether your client had . . . left on his own, had been told to leave and left voluntarily, or whether there was some confusion between the parties, but certainly [Sindy] wasn't expecting him to be there." *Id.*

[20] We agree with the trial court that the parties presented conflicting evidence concerning Morales's right to be in Juan's apartment on the date of the offense.

Therefore, the trial court acted within its discretion when it included the challenged language in its self-defense instruction.

[21] Even if we concluded that the challenged language misled the jury, as Morales suggests, errors in jury instructions are harmless where "a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise." *Cardosi v. State*, 128 N.E.3d 1277, 1288 (Ind. 2019) (citation omitted). Here, the State proved beyond a reasonable doubt that 1) Morales was the initial aggressor, 2) the level of force Morales used was excessive and unreasonable under the circumstances, and 3) Morales's use of deadly force was not reasonable or he did not have a reasonable belief that such force was necessary to prevent death or serious bodily injury to him.

[22] Morales's statement to the police was admitted into evidence. Morales told the police that Juan came into his bedroom while he was sleeping, treated Morales badly, and spoke harshly to him. Ex. Vol, State's Ex. 53. Morales said that Juan was angry and "challenged" him. *Id.* Morales stated he reacted by going into the kitchen, grabbing a knife and "mess[ing] him up." *Id.* Morales admitted that Juan did not have a weapon of any sort. *Id.* Morales alleged that Juan offended him and tried to push him. *Id.* But Morales contradicted himself and also stated that Juan did not touch him. *Id.*

[23] Even if the jury believed Morales's version of the events and believed that Morales had a right to be in the apartment, it was not reasonable for Morales to react to Juan's anger by stabbing the unarmed man in the lower chest with a

knife. Moreover, the jury reasonably credited Juan's and Sindy's testimonies that Juan did not speak to Morales when Juan returned to the apartment, Morales exited the bedroom and approached Juan from behind, he touched Juan on the shoulder and stated that he did not want to kill Juan from the back, and Morales pulled a knife from his pocket and stabbed Juan in the lower chest as Juan turned towards him. For these reasons, we conclude that even if the trial court had erred when it tendered the instruction with the challenged language, any error would be harmless.

[24] Finally, Morales argues that the challenged language should have been omitted from the instruction because it is not included in the pattern jury instruction for self-defense. Tr. p. 195. "The Indiana Pattern Jury Instructions are prepared under the auspices of the Indiana Judges Association in conjunction with the Indiana Judicial Conference Criminal and Civil Instruction Committees. Although they are not formally approved for use, they are tacitly recognized by Indiana Trial Rule 51(E)." *Campbell v. State*, 19 N.E.3d 271, 275 n.3 (Ind. 2014). Although the Pattern Jury Instructions have not been formally approved by our supreme court, and certain pattern instructions have even been held to be incorrect statements of the law, pattern jury instructions are given "preferential treatment" during litigation, and the preferred practice is to use the pattern instructions. *Harrison v. State*, 32 N.E.3d 240, 252 n.5 (Ind. Ct. App. 2015), *trans. denied*.

[25] But trial courts are not required to tender pattern instructions to the jury. *See Washington v. State*, 997 N.E.2d 342, 350 (Ind. 2013) (concluding that "[t]rial

courts continue to have the discretion to augment the pattern instructions whenever they deem appropriate and to refuse any tendered instructions consistent with the requirements of *Walden* [*v. State*, 895 N.E.2d 1182 (Ind. 2008)]. Their decisions will be reviewed for an abuse of discretion."). And Morales has not presented us with a compelling argument or citation to any authority that would lead us to conclude that the trial court abused its discretion by failing to give the self-defense pattern jury instruction in this case.

For all of these reasons, we conclude that the trial court did not abuse its discretion when it instructed the jury on the law of self-defense.

Affirmed.

Robb, J., and Pyle, J., concur.